**UNITED STATES of America, Appellee,**

v.

**Gregory V. BROWN, Defendant–Appellant.**

**No. 1391, Docket 90–1682.**

United States Court of Appeals, Second Circuit.

Argued May 31, 1991.

Decided June 20, 1991.

Bernard J. Malone, Asst. U.S. Atty., N.D. N.Y. (Frederick J. Scullin, Jr., U.S. Atty., N.D.N.Y., Barbara D. Cottrell, Asst. U.S. Atty., N.D.N.Y., Albany, N.Y., of counsel), for appellee.

Jeffrey Francisco, Schenectady, N.Y., (Martin, Harding & Francisco, of counsel), for defendant-appellant.

Before OAKES, Chief Judge, and KAUFMAN and WALKER, Circuit Judges.

Irving R. KAUFMAN, Circuit Judge:

The threat of violence prevailing in our society has proven as destructive to its morale as the commission of retaliatory acts themselves. Aware of this, Congress drafted Section 1513 of the United States Code, Title 18, with the express purpose of deterring offenders from retaliating or threatening to retaliate against government witnesses who provide law enforcement officials with information relating to federal offenses. The law both preserves the public interest by safeguarding the administration of justice, and protects individual witnesses anxious to come forward with potentially incriminating evidence.

In the case before us, we are called upon to determine if sufficient evidence was presented at trial to sustain defendant-appellant Brown's conviction for threatening to cause bodily harm to his former girlfriend, Susan Linehan Salone ("Linehan"), in contravention of 18 U.S.C. § 1513. At trial, the jury found Brown guilty of this offense and fifteen other charges relating to the implementation of various fraudulent schemes. Judge Cholakis of the Northern District of New York sentenced Brown to sixteen concurrent thirty-six month terms of imprisonment. On appeal, Brown contests only the § 1513 conviction.

Appellant contends that the government failed to lay a foundation of evidence sufficient for the jury to have concluded beyond a reasonable doubt that Linehan had provided information to federal law enforcement officials. He further alleges that in the absence of proof establishing his knowledge of Linehan's federal informant status, his intent to retaliate could not properly be inferred by the jury. Finally, Brown claims that an intercepted, taped telephone conversation in which he threatened to "erase" Linehan, establishes at most an intent to influence future testimony, but not an intent to retaliate for past information proffered. Because testimony adduced at trial provides a sufficient foundation for the jury to return a finding of retaliatory intent, and because it was properly within the jury's purview to infer Appellant's intent from the circumstantial evidence provided, we affirm the lower court's opinion.

## BACKGROUND

In conforming to our practice to restrict our review to questions of law, it is nonetheless helpful to contextualize the appealable issues by recounting pertinent facts.

Appellant Brown served in the United States Army for eight years, rising to the rank of First Lieutenant prior to his discharge in November of 1988. Though discharged, Brown twice fraudulently managed to obtain active duty military identification cards from the Watervliet Arsenal in Watervliet, New York (the "Arsenal"). Each time, he relied on forged military documents, and falsely represented himself to the identification clerk on duty.

Sometime after his second successful fraudulent request, Brown met and became romantically involved with Linehan. In the course of their tempestuous relationship, Linehan discovered that Brown kept a gun hidden in his home. Without informing him, Linehan brought the gun, and, *inter alia*, one of his forged active duty military identification cards, to the East Greenbush Town Police Department. Brown subsequently reported the items as stolen. On December 11, 1989, Brown was arrested and charged with criminal possession of the gun. That same day, Linehan—who had since broken off her relations with Brown—departed for a month long vacation to Ireland.

Following his arrest and Linehan's departure, Appellant returned to the Arsenal dressed in a flight suit misleadingly adorned with rank insignia. Again he presented forged military orders, and, claiming his old card had been stolen, initiated a third fraudulent request for an active duty military identification card. This time, however, Brown was questioned with regard to the allegedly stolen card by the security supervisor at the Arsenal, who subsequently traced the card and reported his findings concerning Brown to Louis Vega—a Department of Defense Criminal Investigative Service agent stationed at the Arsenal.

During the month that followed, Brown persistently harassed Linehan in Ireland with unsolicited phone calls. On some occasions, he called twice daily, inquiring who she had been talking to, what trouble he had to expect from her, and if she still was in possession of the items she had taken from his apartment.

Upon her return to the United States, Linehan was contacted by Investigator Vega and agents from the United States Customs Bureau and Bureau of Alcohol, Tobacco, and Firearms. She requested that they install a monitoring device on her home phone to prevent further harassment by Brown. Vega contacted Special Agent Roger Rubrecht of the Federal Bureau of Investigations, who, on January 12, 1990, obtained and executed a federal search warrant for Brown's residence.

Various incriminating items were retrieved during the search, including two United States passports—both issued in Brown's name, a date stamp, a rubber stamp identifying Brown as an Army Captain, blank Department of Army letterhead stationary, and automobile importation documents.

On January 24, 1990, Special Customs Agent Daniel Bologna finally complied with Linehan's request and installed a monitoring device on her telephone. That same day, a call was recorded from Brown in which he stated: "... the bottom line is, none of it, or very little of it would have come to light ... if it weren't for you, and talking to people with things that I trusted you with ... if you do anymore damage to my life in any way, I will ... erase you."

The call was reported by Linehan to Customs agents, who took possession of the tape. The following day, Customs dispatched Bologna to Brown's residence to warn him not to have further contact with Linehan. FBI Agent Rubrecht also interviewed Linehan in connection with that department's investigation of Brown. On January 31, 1990, a criminal complaint was

filed, charging Brown with violation of 18 U.S.C. § 1513.

Following a four day jury trial on nineteen different counts, Brown was convicted of misusing military passes, impersonating a federal officer, making false representations to Army officials, converting government property, and unlawfully possessing an identification document with intent to defraud. Appellant was acquitted of the charges of unlawfully importing a firearm, and smuggling. Brown was convicted of the charge of threatening Linehan, in violation of 18 U.S.C. § 1513, which forms the basis for this appeal.

Sentencing was calculated by Judge Cholakis under the standard guidelines, with thirteen three-year and three one-year terms to run concurrently. Though the terms run concurrently, this appeal to reverse Brown's conviction for the eighteenth count is not spurious, since under the Sentencing Guidelines the retaliation conviction placed the defendant in a sentencing range of 33 to 41 months instead of the 4 to 10 month range applied to the most severe of the remaining counts. As we find the evidence abundantly sufficient to sustain the jury's finding of guilt, we affirm the lower court's order.

## DISCUSSION

### A. *Evidentiary Standards*

■ In judging the merits of a case on appeal, it is imperative that the court should not confuse its limited jurisdictional right to pass on the legal question of evidentiary sufficiency, with the jury's more expansive fact-finding right. If, as we here conclude, the government has presented sufficient evidence at trial from which reasonable triers of fact could have determined guilt beyond a reasonable doubt, then we cannot presume to second-guess that judgment.

Though weighing the evidence presented at trial is a function unambiguously reserved for the jury, *United States v. Mariani,* 725 F.2d 862, 865 (2d Cir.1984), determining whether sufficient proof was presented at trial to sustain a conviction does present a legal issue properly brought before this court. The standard guiding courts in this respect has long since been established. The relevant question is not whether this court believes that the evidence at trial established guilt beyond a reasonable doubt. *United States v. Khan,* 787 F.2d 28, 33 (2d Cir.1986). Rather, an appellate court hearing a criminal case must uphold a conviction if *any* rational trier of fact could have found the essential elements of the charged crime beyond a reasonable doubt. *United States v. Roldan–Zapata,* 916 F.2d 795, 802 (2d Cir. 1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1397, 113 L.Ed.2d 453 (1991). In applying this principle of evidence, the court is required to view the evidence in the light most favorable to the government. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Appellant, therefore, carries a heavy burden in challenging the sufficiency of the evidence supporting his conviction in this case. *United States v. Oguns,* 921 F.2d 442, 449 (2d Cir.1990).

Linehan offered direct testimony explicitly attesting to her contact with federal investigative officials, which in itself provided the jury with a sufficient foundation to infer Brown's retaliatory intent. Additionally, there was proof of a federal search of Brown's residence, and testimony from a federally-employed FBI agent, which provided an evidentiary basis to sustain the conviction. Finally, the fact of the recorded phone call itself established both that government officials were involved, and that Brown was engaged in threatening conduct. In light of the testimony proffered at trial—evidence clearly falling within the jury's ambit of consideration—we find the Appellant has failed to present grounds for reversing his conviction.

### B. *Evidence of Retaliatory Intent*

The relevant portion of 18 U.S.C. § 1513 states:

Whoever knowingly engages in any conduct and thereby causes bodily injury to

another person or damages the tangible property of another person, *or threatens to do so,* with intent to retaliate against any person for ... any information relating to the commission or possible commission of a Federal offense ... given by a person to a law enforcement officer [shall be guilty of a crime].

In proving Brown guilty, the Government was required to establish two elements of the crime beyond a reasonable doubt; that Brown engaged in conduct threatening bodily injury to Linehan, and that he acted knowingly, and with specific intent to retaliate against Linehan for the information she divulged to federal authorities in connection with his alleged federal crimes.

Under this statute, the government officials referred to must be federally employed. 18 U.S.C. § 1515 (a)(4). Accordingly, to properly sustain Brown's conviction, sufficient evidence must have been proffered to establish that Linehan's contact with law enforcement officials extended beyond her initial contacts with the local police, and involved federal officers.

The jury was clearly made cognizant of this definitional requirement by the Judge, who repeated the instructions for appropriately finding retaliatory intent no less than three times.

Evidence of Linehan's contact with federal officials was provided directly through Linehan's personal testimony, which recounted her contact with agents from three separate arms of the federal government, all of whom were dispatched to interview her at some time preceding the threatening phone call.

Whether or not Linehan's testimony was credible is a question properly reserved for the jury. Appellant's counsel was afforded ample opportunity at trial to dispute Linehan's testimony. Though he cross-examined her at length, he never disputed or attempted to discredit Linehan's statement concerning her contacts with any of the federal agents and investigators.

Linehan's claims were corroborated by Daniel Bologna, Special Agent for Customs, who filed an affidavit making clear reference to his involvement with her. FBI investigator Rubrecht also testified at trial that his department's involvement with the affair began after federal investigative service agent Vega had spoken with Linehan.

Finally, and most probative, is the telephone call itself. The very fact that there was a tape to play—that federal employees agreed to install a monitoring device on Linehan's phone—provides grounds for rational triers of fact to infer she had provided them with relevant information regarding Brown. Contrary to Appellant's assertion, there is no additional requirement that the government prove the witness in question *initiated* the federal investigation.

 Determining whether a defendant's behavior constitutes threatening conduct is a question of fact generally reserved for the jury. *United States v. Carrier,* 672 F.2d 300, 306 (2d Cir.), *cert. denied,* 457 U.S. 1139, 102 S.Ct. 2972, 73 L.Ed.2d 1359 (1982). In a case of witness retaliation, the government need not adduce direct evidence of Appellant's knowledge of a witness's informant status in order for the jury to infer his intent to retaliate. *United States v. Johnson,* 903 F.2d 1084, 1087 (7th Cir.1990). Since direct evidence of retaliatory intent is rarely available to prosecuting attorneys, *United States v. Moya–Gomez,* 860 F.2d 706, 759 (7th Cir.1988), *cert. denied,* 492 U.S. 908, 109 S.Ct. 3221, 106 L.Ed.2d 571 (1989), courts have long since held it proper for a jury to base its verdict wholly on reliable inferences deduced from circumstantial evidence. *Oguns,* 921 F.2d at 449. As Judge Cholakis instructed the jury, in finding retaliatory intent, it is authorized to consider the context in which the alleged threats were made, the prior relationship between Brown and Linehan, and whether the alleged threats influenced or affected Linehan's emotions or conduct.

 The record reveals both direct testimony and circumstantial evidence from which the jury might have drawn an infer-

ence that Brown knew a federal investigation was under way. Specifically, at trial, Agent Rubrecht testified that the Federal Bureau of Investigation had seized from Brown's home not just incriminating items of interest to local officials, but also his passports and vehicle importation papers. The very nature of the articles seized, as well as the fact that most of Brown's alleged crimes involved frauds perpetrated against the Army and other federal bodies, could have reasonably led the jury to infer that Brown was aware of the federal scope of the investigation.

Sufficient circumstantial evidence also supports the jury's finding that Brown knew it was Linehan who had contacted these federal officials. The most probative evidence was provided to the jury by Brown himself, when he accused Linehan of "talking to people with things that I trusted you with." Juries are free to choose any one of a host of reasonable interpretations in inferring criminal intent. Thus, Appellant is incorrect to assume that the jury violated its function when it affixed only one of "many different interpretations" to his recorded threats. Conceivably, the tape alone might have supported a jury's finding of knowledge and intent.

■ Appellant's final contention, that evidence of his recorded threat at most evinces an intent to obstruct justice by influencing future testimony, but not an intent to retaliate for past information proffered, also fails to persuade us that an insufficient foundation existed to sustain his conviction. The jury could interpret Brown's vow to "erase" Linehan as a retaliatory threat in violation of 18 U.S.C. § 1513. This interpretation of events is especially convincing given Brown's choice of words. The fact that Brown's threats may additionally have been construed as an attempt to influence Linehan to withhold future testimony, does not undermine this jury's findings, since a threat may be construed to intend both retaliation and intimidation. *Johnson*, 903 F.2d at 1087.

## CONCLUSION

In the case before us, sufficient evidence sustains the jury's finding. The verdict of the lower court is affirmed.