USA v. Marcano (Draper)

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2008

(Argued: August 27, 2008                          Decided: January 20, 2009)

Docket No. 07-2301-cr(Lead), 07-2366-cr(Con)
_____

UNITED STATES OF AMERICA,

*Appellee*,

− v. −

CORNEILUS DRAPER, LEDRELL HART

*Defendants-Appellants*.

_____

Before NEWMAN, CALABRESI, and
SOTOMAYOR, *Circuit Judges*.

_____

Defendants-appellants Ledrell Hart and Corneilus Draper appeal from judgments of conviction entered on May 23, 2007 and May 24, 2007, respectively, following a jury trial in the United States District Court for the Eastern District of New York (Dearie, J.) on firearm, narcotics, and witness retaliation and tampering charges. The Court finds plain error in the proceedings below because the jury was improperly charged on the retaliation counts and the evidence presented at trial was insufficient to convict on those counts. The Court thus REVERSES the retaliation convictions and REMANDS to the district court for resentencing.

ELIZABETH GEDDES, Assistant United States Attorney (Susan Corkery, *of counsel*) *for* Benton J. Campbell, United States Attorney for the Eastern District of New York, New York, *for Appellee*.

MICHAEL GOLD, New York, New York, *for Defendant-Appellant* Corneilus Draper; HARRY C. BATCHELDER, JR., New York, New York, *for Defendant-Appellant* Ledrell Hart.

SOTOMAYOR, *Circuit Judge*.

Defendants-appellants Ledrell Hart ("Hart") and Corneilus Draper ("Draper") appeal from judgments of conviction entered on May 23, 2007 and May 24, 2007, respectively, following a jury trial in the United States District Court for the Eastern District of New York (Dearie, J.) on the following witness retaliation, witness tampering, narcotics, and firearm charges: conspiracy to retaliate against a witness, in violation of 18 U.S.C. § 1513(b)(2), (f); retaliating against a witness, in violation of 18 U.S.C. § 1513(b)(2); conspiracy to tamper with a witness, in violation of 18 U.S.C. § 1512(a)(2)(C), (k); tampering with a witness, in violation of 18 U.S.C. § 1512(a)(2)(C); conspiracy to possess with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iii), 846; possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(iii); and possession of a firearm in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i). In this opinion we address only Hart's and Draper's challenge to the sufficiency of the evidence on the witness retaliation convictions and to the applicability of the firearm convictions in calculating their Criminal History Categories. In a companion summary order we consider, and reject, their challenges to the sufficiency of the evidence supporting the firearm, narcotics, and witness tampering charges.

2

Hart and Draper argue that the trial evidence was insufficient to sustain the witness retaliation charges under § 1513(b)(2) and (f) because the government did not show that the witness had adequate contacts with federal authorities prior to being attacked. Additionally, Hart and Draper assert that this Court's recent decision in *United States v. Whitley*, 529 F.3d 150 (2d Cir. 2008), precludes imposition of a mandatory five-year consecutive sentence under § 924 (c)(1)(A)(i) because they are already subject to a "greater minimum sentence" provided by another "provision of law."

Because we conclude that the jury was improperly charged on the witness retaliation counts and that the evidence was insufficient to convict Hart and Draper of those offenses, we find plain error and REVERSE the retaliation convictions. We thus REMAND for resentencing and bring *Whitley* to the district court's attention so that it may consider in the first instance the decision's application to non-firearm offenses and advise us if the sentences it imposes are affected by this issue.

## BACKGROUND

### I.   FACTUAL HISTORY

#### A.   Lincoln Road Productions

As established at trial,[1] Hart and Draper were members of Lincoln Road Productions ("LRP"), a narcotics gang that dealt in crack cocaine in the Lincoln Road and Flatbush Avenue area of Brooklyn, New York. LRP maintained exclusive dominion over the neighborhood the group claimed as its territory, and members pledged to "keep the block pumping" with drugs.

---

[1] Unless otherwise noted, we recount the relevant facts in the light most favorable to the government, "the part[y] in whose favor the jury returned . . . its verdict" on the charges considered in this opinion. *Madeira v. Affordable Housing Found.*, 469 F.3d 219, 223 (2d Cir. 2006).

LRP members also retaliated against and punished those who aided police investigations of the group's activities; the LRP credo was "all informants should be killed."

The attack that led to the applicable convictions stemmed from the police investigation of the murder of Wesley Thomas, who was shot during a robbery at his apartment on July 9, 2001. Hart and Draper were not involved in the murder, but other members of the LRP gang were, including Cory Marcano ("Marcano") and Clinton Davy ("Davy").

**B.      Witness Clinton Davy's Involvement with Local and Federal Authorities and the Three Assaults**

On July 13, 2001, four days after Wesley Thomas's murder, Davy was first "picked up by detectives" and brought to the 71st Precinct in the Brooklyn District Attorney's office. In the early morning hours of July 14, 2001, Davy implicated two "imaginary people" in Thomas's death in a taped statement. Later that day, Davy spoke with Marcano and related the false story he had given police. Hoping Davy would identify the (imaginary) suspects in mug shots, police contacted Davy many times in the weeks that followed. During that time, Marcano became fearful that Davy was cooperating with the police investigation of the Thomas murder. Indeed, Marcano confronted Davy about his frequent police contacts, fearing that Davy was going to "give him up." Marcano also communicated his fear to other LRP members. On August 2, 2001, Davy met with unnamed "police officers," ended his ruse, and advised them that Marcano was involved in the robbery and murder of Wesley Thomas.

On May 8, 2002, approximately nine months after the murder, Davy made another statement to unnamed "police" at the 71st Precinct, again implicating Marcano. On December 7, 2002, after Davy was arrested for an unrelated robbery, Davy gave New York City Police Detective Pete Margraf information allowing him to obtain a search warrant for an apartment

4

used by Marcano. On December 8, 2002, local law enforcement executed the search warrant, and based on the results of the search, Marcano and fellow LRP member Rohan McCrea were arrested and taken to the 71st Precinct.

On December 9, 2002, Marcano was interviewed by a number of city, state, and federal agents: Detective Margraf; New York City Police Department Detective John Lindner, a member of the "Organized Crime Drug Enforcement Strike Force," which coordinated with the Drug Enforcement Administration, the Federal Bureau of Investigation ("FBI"), Immigration and Customs Enforcement, the Internal Revenue Service, the New York City Police, and the New York State Police; Immigration Special Agent Chris Quinn; and FBI Special Agent DeMartino. During his interview, Marcano admitted he sold crack cocaine for Jermaine Dixon, a member of the Patio Crew (the predecessor gang to LRP). Detective Lindner asked Marcano about the Thomas murder, and Marcano replied that he believed that Davy had implicated him in Thomas's death.

Davy was subsequently assaulted on three separate occasions. The first assault occurred on February 3, 2003, when Davy was robbed of money he owed to a drug dealer. One of his assailants told him he was lucky Marcano had not already killed him for snitching. The second assault took place one month later, in March 2003, when Davy met with various LRP members in his mother's restaurant in an effort to resolve differences. Again, his assailants called him a snitch and stated the beating was in retaliation for providing law enforcement with information about Marcano. Hart and Draper were not involved in either of these assaults.

The third and final incident, most relevant here, occurred on April 8, 2003. According to Davy, Hart came to the door of his girlfriend's apartment, where Davy was "laying low." Hart entered the apartment ostensibly to retrieve a video game. When Davy was distracted, Hart

5

opened the door to let Draper and LRP members Andrew Edwards and Zakee Campbell into the apartment. Davy was then brutally assaulted with a clothing iron, electrical cords, and bleach. In addition to demanding money, Davy's assailants derided him for snitching on Marcano. One of the attackers suggested Davy be shot. The police arrived, however, before he was killed. Davy then informed the authorities that he had been a victim of a robbery.

On April 10, 2003, at the direction of the Brooklyn District Attorney's Office, Davy met federal agents at the state court house. He was then brought to the United States Attorney's Office, where he met with federal prosecutors. April 10, 2003 was the first time Davy spoke to the federal agent and prosecutor in a statement.

## II.     PROCEDURAL HISTORY

The case was tried before a jury from March 7, 2005 to March 24, 2005. After closing arguments, Hart and Draper each made a Motion for a Judgment of Acquittal. As to the retaliation counts, both argued that the evidence submitted at trial was insufficient, and Draper asserted that the key witness, Davy, was "incredible on his [sic] face." The district court later denied both motions.

In its jury charge for the retaliation counts under 18 U.S.C. § 1513, the district court instructed the jury that the government was required to prove the following elements:

> *First,* that the defendant engaged in conduct causing bodily injury to a [sic]
> Clinton Davy; and
> *Second,* that the defendant acted knowingly and with specific intent to retaliate
> against Davy for information . . . given relating to the commission or possible of [sic]
> commission of a federal offense to a law enforcement officer.

The court then expanded upon the second element:

> The second element the government must prove beyond a reasonable doubt is that
> the defendant acted knowingly and with the specific intent to retaliate against a
> person for information given to a law enforcement officer relating to the

6

commission of a federal offense. An act is done knowingly if it is done voluntarily and purposefully and not by accident or mistake. By specific intent, I mean that the defendant must have acted knowingly and with the unlawful intent to retaliate against a person, Clinton Davy, for information Davy gave to a law enforcement officer relating to the commission of a federal offense. In order to satisfy this element, it is not necessary for the government to prove that the defendant knew he was breaking any particular law.

At the charging conference, neither Hart nor Draper objected to the jury instructions for the retaliation counts under 18 U.S.C. § 1513. After the jury's verdict, Draper was sentenced principally to a total of 22 years' imprisonment: 10 years on the conspiracy and substantive witness retaliation charges; 17 years on the conspiracy and substantive cocaine possession and witness tampering charges, running concurrently with the retaliation charges; and 5 years on the firearm possession in relation to a drug trafficking offense, running consecutively to the other charges. Hart was sentenced principally to a total of 17 years' imprisonment: 10 years on the conspiracy and substantive witness retaliation and cocaine possession charges; 12 years on the conspiracy and substantive witness tampering charges, running concurrently with the witness retaliation and cocaine charges; and 5 years on the possession of a firearm in relation to a drug trafficking offense, running consecutively to the other charges.

On their initial appeal, Hart and Draper conceded that they participated in the attack on Davy. Both, however, asserted that the evidence against them was insufficient to support the witness retaliation charges because it did not establish that they had the specific intent to retaliate against Davy for providing information about a federal offense to law enforcement. *See* § 1513(b)(2). Rather, they claimed they were motivated by money, and Davy's beating was only a robbery.

Following oral argument, this Court directed further briefing as to whether § 1513(b)(2) and (f), which criminalize retaliation against witnesses, require the government to show that the

7

witness actually cooperated with federal law enforcement prior to the retaliation, and if so, whether the trial evidence supported a finding of such cooperation in this case.

Post-argument briefing was also directed in connection with *United States v. Whitley*, 529 F.3d 150, 151, 158 (2d Cir. 2008), to determine if the logic of its holding, which excludes defendants subject to certain mandatory minimum sentences from a consecutive mandatory minimum sentence under 18 U.S.C. § 924(c)(1)(A), extends to the narcotics convictions in this case.

## DISCUSSION

## I.    WITNESS RETALIATION

### A.    Standard of Review

Because Hart and Draper did not object below or in their initial appeal briefs to the sufficiency of the evidence supporting the witness retaliation element that was the subject of the supplemental briefing, we review that issue for plain error.[2]  *See* Fed. R. Crim. P. 52(b); *United States v. Svoboda*, 347 F.3d 471, 484 (2d Cir. 2003) ("[B]ecause Defendant failed to object . . . , our review is for plain error."); *Keppler*, 2 F.3d at 23–24 (2d Cir. 1993) (noting issues not raised in the district court are waived on appeal absent a showing that the district court committed plain error).

---

[2] "Ordinarily," arguments not raised on appeal are "deemed abandoned." *United States v. Babwah,* 972 F.2d 30, 34 (2d Cir. 1992).  "However, Fed. R.App. P. 2 gives a Court of Appeals the discretion to overlook such failure if a manifest injustice otherwise would result." *United States v. Allen,* 127 F.3d 260, 264 (2d Cir. 1997) (internal quotation marks omitted).  Because we have held that a finding of plain error implicates a "manifest injustice," it is appropriate for us to proceed with such review.  *See United States v. Keppler*, 2 F.3d 21, 24 (2d Cir. 1993) (noting that plain errors "affect . . . substantial rights . . . the violation of which would result in manifest injustice." (citations and internal quotation marks omitted)).  *See also United States v. Quintana,* 300 F.3d 1227, 1232 (11th Cir. 2002) (equating manifest injustice with the plain error standard of review).

For an error to be plain, "it must be a clear or obvious deviation from current law that affected the outcome of the district court proceedings." *United States v. Crowley,* 318 F.3d 401, 415 (2d Cir. 2003) (internal brackets and quotation marks omitted). A plain error should be remedied by a reviewing court only "if the error seriously affects the fairness, integrity or public reputation of the judicial proceedings." *Id.* (internal brackets and quotation marks omitted).

### B. The Witness Retaliation Standard

Hart and Draper were convicted of federal witness retaliation under 18 U.S.C. § 1513(b), which states, in relevant part:

> Whoever knowingly engages in any conduct and thereby causes bodily injury to another person or damages the tangible property of another person, or threatens to do so, with intent to retaliate against any person for . . . any information relating to the commission or possible commission of a Federal offense . . . given by a person to a law enforcement officer [shall be guilty of a crime].

18 U.S.C. § 1513(b)(2).

Under 18 U.S.C. § 1515(a)(4), "law enforcement officer" is defined specifically as one employed by the federal, rather than state or local, government:

> [T]he term "law enforcement officer" means an officer or employee of the Federal Government, or a person authorized to act for or on behalf of the Federal Government or serving the Federal Government as an advisor or consultant . . . authorized under law to engage in or supervise the prevention, detection, investigation, or prosecution of an offense . . . .

18 U.S.C. § 1515(a)(4).

We have previously held that to sustain a witness retaliation charge, the government must establish three elements: One, the defendant engaged in conduct that caused or threatened a witness with bodily injury; two, the defendant acted knowingly, with the specific intent to retaliate against the witness for information the witness divulged to law enforcement authorities about a federal offense; and three, the officials to which the witness divulged information were

9

federal agents. *See United States v. Brown,* 937 F.2d 32, 36 (2d Cir. 1991).[3]

Only the third element—the subject of the supplement briefing—is at issue in this case. Under this element, it is immaterial whether the witness actually initiated contact with federal authorities. *Id.* Instead, where the witness initially had contacts with state authorities, the government must provide sufficient evidence that the witness's "contact with law enforcement officials extended beyond her initial contacts with the local police, and involved federal officers." *Id.* In *Brown,* for example, sufficient evidence of the witness's contacts with federal authorities was adduced at trial when the witness was threatened after communicating directly with officials from the FBI, the United States Customs Bureau, and the Bureau of Alcohol, Tobacco, and Firearms, and those federal agents also searched and entered the witness's home to install a phone monitoring device. *Id.* at 34, 36.

### C.    Plain Error Analysis

#### 1.    Error

The first step of plain error review requires a determination that "error" in fact occurred. *United States v. Olano,* 507 U.S. 725, 732 (1993). "Error" for this purpose is defined as a "[d]eviation from a legal rule." *Id.* at 732–33. In this case, the jury instructions were in error. The district court instructed the jury that the government was required to prove the defendants specifically intended to retaliate against Davy for information "given relating to the . . . commission of a federal offense to a law enforcement officer." The court expanded on the meaning of specific intent, but it failed to set out what the statute and this Circuit's case law clearly require the government to also prove: that at least one of the law enforcement officials

---

[3] While in *Brown* we described the charge as requiring two elements, we also made clear that "the government officials referred to [in element two] must be federally employed," a requirement we now explicitly describe as a third element of the offense. 937 F.2d at 36.

contacted was "an officer or employee of the Federal Government." § 1515(a)(4).  In the absence

of such a clarification, the jury charge did not explain one of the elements necessary to sustain a

 § 1513(b) witness retaliation charge.  It was thus in error.  *See Japan Airlines v. Port Auth. of*

*New York & New Jersey,* 178 F.3d 103, 110 (2d Cir. 1999) ("A jury instruction is erroneous if it

misleads the jury or does not adequately inform the jury on the law.").

### 2.      Plain

The second step of plain error review requires a determination that the error was "plain."

*Olano*, 507 U.S. at 734.  "Plain" for this purpose is defined as "clear" or "obvious."  *Id.* (internal

quotation marks omitted).  *See also United States v. Yu-Leung,* 51 F.3d 1116, 1121 (2d Cir.

1995) (noting that "the error must be so plain that the trial judge and prosecutor were derelict in

countenancing it, even absent the defendant's timely assistance in detecting it" (internal

quotation marks omitted)).   Because in this case the district court omitted an element of the

witness retaliation offense in its charge to the jury, the error was clear and obvious and therefore

plain.  Indeed, without awareness of the government's burden to prove that Davy had been in

contact with federal authorities prior to being attacked, the jury may have quite reasonably

convicted Hart and Draper pursuant to Davy's numerous contacts with the local police.

### 3.      Affected Substantial Rights and the Fairness, Integrity, or Public Reputation of Judicial Proceedings

Although the jury instructions were in error, and the error was plain, the plain error

standard is not met unless the error "affect[ed] substantial rights."  *Olano,* 507 U.S. at 734

(internal quotation marks omitted).  This means the error was "prejudicial" in that it "affected the

outcome of the district court proceedings."  *Id.*  Even then, however, we retain the discretion to

decline to correct an error even if it affects substantial rights.  *Id.* at 735.  The standard applied in

making this determination is whether "the error seriously affects the fairness, integrity, or public

reputation of judicial proceedings." *Johnson v. United States,* 520 U.S. 461, 467 (1997) (internal quotation marks and brackets omitted).

In this matter, for example, had the government adduced sufficient evidence that Davy *did*, in fact, have contacts with federal agents prior to the beating, the inadequate jury charge might not have affected the defendants' substantial rights, nor would the fairness of the judicial proceedings necessarily be called into question. In contrast, this Circuit has previously held that the "failure by the [g]overnment to adduce sufficient evidence . . . is a defect affecting substantial rights which we may notice under F.R.Cr.P. 52(b)." *United States v. Kaplan,* 586 F.2d 980, 982 n.4 (2d Cir. 1978); *see also United States v. Muniz,* 60 F.3d 65, 67 (2d Cir. 1995) rev'd on reconsideration, on other grounds, 184 F.3d 114 (2d Cir. 1997) ("A convicted defendant who fails to raise the issue of insufficient evidence in the trial court cannot prevail on that ground on appeal unless it was plain error for the trial court not to dismiss on its own motion.").

Thus, we must consider whether the evidence presented at trial was sufficient to sustain the witness retaliation charges. As already noted, we need not focus on the first two elements of the § 1513(b) retaliation charge. On appeal, Hart and Draper did not contest that they caused Davy bodily injury. Contrary to appellants' contentions, ample trial evidence—LRP's anti-snitching motto, Marcano's stated belief that Davy had implicated him in the Thomas murder, accusations of snitching expressed during the Davy assault, and the sheer brutality of Davy's beating—indicates that a reasonable jury could have found that Davy's assailants acted with the intent to retaliate for his cooperation with the law enforcement authorities. *See United States v. Vasquez,* 267 F.3d 79, 90 (2d Cir. 2001) ("A conviction challenged on sufficiency grounds will be affirmed if, viewing all the evidence in the light most favorable to the prosecution, a reviewing court finds that *any* rational trier of fact could have found the essential elements of the

12

crime beyond a reasonable doubt." (internal quotation marks omitted)).

At issue is the third element of the witness retaliation charges—whether the witness had sufficient contacts with federal agents prior to being attacked. We have not previously had the opportunity to define what constitutes adequate contact with federal agents under this element of the retaliation statute. In *Brown* the contacts were adequate where the witness was interviewed directly by federal agents. 937 F.2d at 34. Presumably adequate contact might also be established if the witness provides information to a person the witness intends (or perhaps reasonably believes) will pass the information on to federal officials.

In this case, the government argues that because Davy provided information to local authorities, which led to Marcano's arrest, and because federal agents were present during Marcano's subsequent interview, where he accused Davy of implicating him in the murder, "it is only logical to infer that prior to this interview (or at worst, immediately thereafter), the federal authorities learned of Davy's statements implicating Marcano."

But this sequence merely shows that Marcano had contact with federal officers. Only through a tortured reading of the statute could one find Davy to have "given" information to a federal officer because Marcano later told federal officers that he believed Davy had implicated him in the Thomas murder. It would be a similarly incorrect reading of the statute and our precedent to argue that a witness's interactions with local authorities, which just happen to be eventually reported to federal authorities, provide the requisite federal contacts under the statute. Rather, the statute is clear that the retaliation must be for information "given by a person to a law enforcement officer," and that the officer must be federal. 18 U.S.C. § 1513(b)(2).

Davy's contacts with federal agents prior to the attack were inadequate to meet that

13

standard. In fact, at trial, Davy testified that his first contact with federal agents occurred on April 10, 2003, two days *after* the relevant attack, and nothing in the record suggests that he had anticipated such a meeting. Without evidence to the contrary, there is simply nothing to show that, prior to being beaten, Davy had any interaction with federal authorities or passed on any information to someone he believed would inform federal authorities. The evidence was therefore insufficient to sustain the witness retaliation charges.

Because Hart and Draper were convicted based on jury instructions that omitted an element of the offense, the government's failure to present any evidence to support that element plainly affected Hart's and Draper's substantial rights. Indeed, had the jury been charged with parsing the government's evidence to ensure that Davy's contacts were explicitly federal, the jury would not reasonably have returned a conviction on the retaliation counts, given that there was no such evidence to parse. Thus, there exists "a reasonable probability that, but for [the error claimed], the result of the proceeding would have been different," a finding that implicates substantial rights under the plain error test. *United States v. Dominguez Benitez,* 542 U.S. 74, 81–82 (2004) (internal quotation marks omitted).

We also believe, again under these circumstances and for the same reasons, that the error "seriously affect[ed] the fairness" of the proceeding below and exercise our discretion to correct it, having found the error to satisfy the plain error test. *Olano*, 507 U.S. at 736.

### D.     The Witness Retaliation Convictions are Reversed

Having found plain error, we reverse Hart's and Draper's convictions on the witness retaliation counts (Counts Five and Six) and order dismissal of these counts. *See United States v. Javino,* 960 F.2d 1137, 1141 (2d Cir. 1992) (holding that if there was a failure to instruct on an

14

element of an offense, but "there was sufficient evidence in the record to permit the jury to find the element proven beyond a reasonable doubt, the appropriate remedy is vacation of the conviction and remand for a new trial," while if "the evidence at trial was insufficient to prove that element, we must reverse and order dismissal of that count").

## II.     *UNITED STATES V. WHITLEY*

Section 924(c)(1)(A) of Title 18 of the United States Code provides for mandatory sentencing enhancements where firearms are possessed, brandished, or discharged during the commission of a violent or drug trafficking crime. An introductory clause—known as the "except" clause—allows for defendants to escape the mandatory enhancements where "a greater minimum sentence is otherwise provided . . . by any other provision of law." *Id.*

In *United States v. Whitley,* 529 F.3d 150 (2d Cir. 2008), this Court considered the "except" clause and suggested that it was properly "read literally." *Id.* at 158. The Court also acknowledged, however, that limiting the except clause to higher mandatory minimums in other firearm offenses might eliminate certain sentencing and grammatical anomalies identified by the government. *Id.* at 153–55. Ultimately, the defendant in *Whitley* was exempted from a mandatory ten-year consecutive minimum sentence for discharging a firearm during a violent crime under § 924(c)(1)(A)(iii) because he was already subject to a higher mandatory fifteen-year minimum armed career criminal provision. *Id.* at 151.

*Whitley* was decided after Hart's and Draper's sentencing and briefing. Hart and Draper received both a mandatory ten-year minimum for narcotics offenses and a mandatory consecutive five-year minimum for firearm possession under § 924(c)(1)(A)(i). Consequently, if *Whitley*'s logic extends to non-firearm convictions, Hart and Draper would not be subject to the latter mandatory consecutive minimum. *See id*. at 155.

15

In their post-argument briefs on this issue, Hart and Draper assert that, given the *Whitley* court's literal reading of the phrase, "any other provision of law," there is no ground for confining the decision to only certain types of offenses. *See id.* at 156–58 (giving the "except clause" its literal meaning). Because Hart and Draper are already subject to mandatory minimums for their narcotics offenses that are greater than the mandatory minimums for their firearms offenses, they argue remand is appropriate.

The government, in contrast, urges us to deem the "except clause" limited to firearm offenses, eliminating any need for remand. In the alternative, the government suggests that, because the district court imposed sentences below the Guidelines but above the statutory minimum, Hart's and Draper's sentences were not affected by § 924(c)(1)(A) no matter how far *Whitley*'s reasoning extends, thus again making remand unnecessary.

It is premature for us to delve into these issues. The meaning of § 924(c)(1)(A), in light of *Whitley*, is pending before this Court in *United States v. Williams*, No. 07-2436. Moreover, because we are reversing the witness retaliation convictions, *de novo* resentencing is required and we are compelled to remand this matter to the district court in any event. *See United States v. Barresi*, 361 F.3d 666, 672 (2d Cir. 2004) (resentencing should usually be *de novo* when an appellate court reverses one or more convictions); *United States v. Quintieri,* 306 F.3d 1217, 1228 (2d Cir. 2002) (same).

We note that with respect to sentences issued prior to *United States v. Booker*, 543 U.S. 220 (2005), which changed the nature of the Federal Sentencing Guidelines, we commonly remanded to the district court where we could not "know whether a correct perception of the law would have produced a different sentence." *United States v. Crosby,* 397 F.3d 103, 118 (2d Cir. 2005). For sentences rendered pre-*Whitley*, the same procedure may be warranted. In this case,

16

resentencing will provide the district court with the opportunity to reexamine the defendants'
original sentencing for the open *Whitley* question, as well as to identify how each new sentence it
imposes is or is not affected by the issue.

## III.   CONCLUSION

For the reasons discussed, we REVERSE the convictions on Counts Five and Six for
conspiracy to retaliate against a witness and for retaliating against a witness and order these
counts dismissed; AFFIRM the convictions on Counts Seven, Eight, Nine, Ten, and Eleven
relating to the witness tampering, narcotics, and firearm charges; and REMAND for
resentencing.  Judgments REVERSED in part, AFFIRMED in part, and REMANDED.