22-2789(L)
*United States v. Moslem*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

  At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 25th day of September, two thousand twenty-five.

PRESENT:

    DENNY CHIN,
    RICHARD J. SULLIVAN,
    STEVEN J. MENASHI,
     *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

    *Appellee,*

    v.

MEHDI MOSLEM, SAAED MOSLEM,

    *Defendants-Appellants.*

_____

Nos. 22-2789(L),
22-2790(Con),
23-6621(Con),
23-7144(Con),
23-7151(Con),
23-7706(Con),
24-543(Con)

**For Appellant Mehdi Moslem:** Mehdi Moslem, *pro se*, Central Valley, NY.

**For Appellant Saaed Moslem:** Saaed Moslem, *pro se*, FCI Fort Dix, Joint Base MDL, NJ.

**For Appellee:**

Nicholas S. Bradley, James Ligtenberg, Assistant United States Attorneys, *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY.

Appeal from judgments of the United States District Court for the Southern District of New York (Cathy Seibel, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the October 24, 2022 judgments of the district court are **AFFIRMED**.

Mehdi Moslem and Saaed Moslem (together, "Defendants") appeal from their judgements of conviction following a jury trial in which the father and son were found guilty of conspiring to commit tax fraud and bank fraud in violation of 18 U.S.C. §§ 371 and 1349, and Saaed was separately found guilty of making false statements to a bank in violation of 18 U.S.C. §§ 1014 and 1344, bankruptcy fraud in violation of 18 U.S.C. § 152, and aggravated identity theft in violation of 18 U.S.C. § 1028A. The court principally sentenced Mehdi to 40 months'

imprisonment and Saaed to 8 years' imprisonment.   We assume the parties'

familiarity with the underlying facts, procedural history, and issues on appeal.[1]

## I.   Defendants Have Failed to Establish Outrageous Government Misconduct.

On appeal, Defendants contend that the government's use of their longtime

accountant, Stephen Strauhs, as a confidential informant constituted outrageous

governmental conduct that "offended" "common notions of fairness and decency"

and thus required the dismissal of their indictments.   *United States v. Walters*, 910

F.3d 11, 27 (2d Cir. 2018) (internal quotation marks omitted).   We review the

district court's denial of Defendants' motion to dismiss *de novo*, *see id.* at 22, but

note that courts "have almost never found" that government conduct rises to this

level, *United States v. Berkovich*, 168 F.3d 64, 69 (2d Cir. 1999).

The evidence at trial showed that it was *Defendants* who directed Strauhs to

prepare and submit fraudulent documents on their behalf, and that the charged

fraud *predated* Strauhs's decision to become a confidential informant.   This case

thus resembles *United States v. Dyman* in which we upheld the district court's

---

[1] Mehdi submitted both counseled briefs and a supplemental *pro se* brief.   After briefing closed, he then moved to relieve counsel and proceed with this case entirely *pro se*.   For his part, Saaed relieved his appellate counsel soon after appointment and submitted only *pro se* briefs on appeal. Each appellant joins the other's arguments to the extent applicable to him.   We accordingly have considered all arguments that have been raised in the course of this consolidated appeal.

denial of a motion to dismiss the indictment where the informant simply "followed instructions from [defendants]" and "never pressured [defendants] . . . to engage in criminal activity." 739 F.2d 762, 769 (2d Cir. 1984). Defendants do not seriously contend that they were coerced by Strauhs, and even if it could be argued that Strauhs, as Defendants' accountant, "coach[ed]" them on how to commit the fraud, this alone "does not suffice" to show outrageous government misconduct. *United States v. Cromitie*, 727 F.3d 194, 219 (2d Cir. 2013) (internal quotation marks omitted). We have affirmed convictions stemming from sting operations far more elaborate than what transpired here, such as where the informant was an attorney who counseled the defendant against cooperating, *see United States v. Williams*, 372 F.3d 96, 106, 111–12 (2d Cir. 2004), and Defendants provide no legal support for their argument that Strauhs' position as an accountant, alone, transforms the investigation into outrageous governmental conduct. We therefore affirm the district court's denial of their motion to dismiss the indictment.

## II. Neither Count One nor Count Two Were Impermissibly Duplicitous, and Defendants Were Not Entitled to a Multiple Conspiracies Charge.

Defendants next argue that their convictions under Count One (tax fraud conspiracy) and Count Two (bank fraud conspiracy) must be vacated because each

4

count was impermissibly duplicitous. Defendants alternatively argue that they were entitled to a jury instruction on multiple conspiracies. Because Defendants failed to raise either argument before trial, we review these challenges for plain error. *See United States v. Marcus*, 560 U.S. 258, 262 (2010).

As to Count One, it was not improper for the government to include allegations concerning the unreported debt cancellation of Accel Motors – an entity that was wholly owned by Mehdi – alongside allegations that Defendants underreported profits from their shared enterprise, Exclusive Motor Sports, LLC ("Exclusive"). The evidence at trial showed that the father's and son's finances were closely intertwined and that the two routinely discussed each other's taxes with Strauhs. A rational juror therefore could find that Exclusive and Accel Motors were, at most, separate "spheres of operation" that, through "mutual dependence and assistance," formed a more general scheme with the "common goal" of lowering Defendants' tax obligations. *United States v. Payne*, 591 F.3d 46, 61 (2d Cir. 2010) (internal quotation marks omitted).

With respect to Count Two, Mehdi contends that the indictment improperly included allegations concerning Saaed's submission of a fraudulent car-loan application that did not involve Mehdi. But that loan financed a car sold by

5

Exclusive, and the evidence showed that Defendants routinely made false statements to banks to funnel money toward that joint enterprise. Even if Mehdi was not involved with procuring this specific loan, the law is clear that a defendant "need not have agreed [to] [all] the details of a conspiracy[] so long as [he] agreed on the essential nature of the plan." *United States v. Geibel*, 369 F.3d 682, 689 (2d Cir. 2004) (internal quotation marks omitted). We therefore have little difficulty rejecting Mehdi's challenge to Count Two, particularly on plain-error review.

For his part, Saaed argues that the indictment improperly strung together multiple fraudulent loan applications, made over the course of several years, as part of a single bank-fraud conspiracy count. But our caselaw is clear that "multiple acts" may be "charged as a single count" so long as they can be characterized as "part of a single scheme." *United States v. Moloney*, 287 F.3d 236, 241 (2d Cir. 2002). The government was permitted to allege the multiple loan applications together, just as it could allege multiple narcotics sales as part of a single ongoing drug conspiracy, *see United States v. Tutino*, 883 F.2d 1125, 1141 (2d Cir. 1989), or multiple bank transactions comprising a single money-laundering scheme, *see Moloney*, 287 F.3d at 241. Accordingly, neither Count One nor Count Two was impermissibly duplicitous.

We also reject Defendants' argument that the district court plainly erred by not providing a jury instruction on multiple conspiracies. As noted above, there was ample evidence demonstrating "that the conspiracy alleged in the indictment existed." *Payne*, 591 F.3d at 62. More importantly, Defendants have identified no evidence that "supports an inference that there was more than one conspiracy." *United States v. Vazquez*, 113 F.3d 383, 386 (2d Cir. 1997). Nor have they shown that they were prejudiced in a manner that "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Marcus*, 560 U.S. at 262 (alteration accepted and internal quotation marks omitted).

## III. The District Court Did Not Abuse Its Discretion in Excluding Evidence That Defendants Repaid Some of the Loans.

Defendants next contend that the district court erroneously prevented them from showing that they had repaid some of the fraudulently obtained loans. But the bank fraud statute does not "requir[e] that the victim bank ultimately suffer financial harm, or that the defendant intend that the victim bank suffer such harm." *Shaw v. United States*, 580 U.S. 63, 68 (2016). To the contrary, a scheme to defraud is "complete when the cash [i]s taken," *id.* (internal quotation marks omitted), so evidence concerning repayment of the loans was not relevant to any defense at trial. Defendants nonetheless argue that the evidence of repayment,

though made years after fraud, tended to show that they lacked the requisite intent to deceive the banks.   But even if that were the case, we still could not say that the district court abused its discretion when it concluded, in light of *Shaw*, that the marginal relevance of such evidence was substantially outweighed by the risk of juror confusion under Federal Rule of Evidence 403.   *See United States v. McGinn*, 787 F.3d 116, 127 (2d Cir. 2015) ("[W]e will disturb an evidentiary ruling only where the decision . . . was manifestly erroneous" (internal quotation marks omitted)).

## IV.   The District Court's Instructional Error Did Not Cause Prejudice.

Defendants next contend that the district court erred when it instructed the jury on both a traditional property theory and a right-to-control theory of wire fraud with respect to the bank-fraud conspiracy.   According to Defendants, "it is impossible to tell" whether the jury relied on the latter theory, *Yates v. United States*, 354 U.S. 298, 312 (1957), which has since been invalidated by the Supreme Court in *Ciminelli v. United States*, 598 U.S. 306 (2023).   As Defendants did not object to the instruction, our review is for plain error.   *United States v. Prado*, 815 F.3d 93, 100 (2d Cir. 2016).

Unlike *Ciminelli*, in which the government relied "solely" on a right-to-control theory, 598 U.S. at 310, the government here primarily argued that

8

Defendants successfully obtained money – a traditional property interest – by submitting fabricated documents with their bank loan applications. "[G]iven the strength of the evidence supporting the [traditional property theory]," *Stone v. United States*, 37 F.4th 825, 831 (2d Cir. 2022) (internal quotation marks omitted), we are "confident that the jury [would have] convicted in the absence of the error," *United States v. Laurent*, 33 F.4th 63, 87 (2d Cir. 2022) (internal quotation marks omitted).

## V. Sufficient Evidence Supports Saaed's Aggravated Identity Theft Conviction.

Separately, Saaed challenges the sufficiency of the evidence underlying his conviction for aggravated identify theft. On sufficiency review, "we must view the evidence in the light most favorable to the government" and will uphold the jury's verdict "if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Atilla*, 966 F.3d 118, 128 (2d Cir. 2020) (internal quotation marks omitted). Moreover, because Saaed did not make a Rule 29 motion below, we review his sufficiency challenge for plain error. *United States v. Draper*, 553 F.3d 174, 179 (2d Cir. 2009) (noting that we will reverse a conviction based on insufficient evidence "only if the error seriously

9

affects the fairness, integrity[,] or public reputation of the judicial proceedings" (internal quotation marks omitted)).

The aggravated identify theft statute makes it unlawful to "knowingly transfer[], possess[], or use[], without lawful authority, a means of identification of another person" in relation to another predicate offense, which here was bank fraud. 18 U.S.C. § 1028A(a)(1). At trial, the government introduced evidence that Saaed sold a car to a man who, in turn, attempted to finance the car by having his then-girlfriend, Dana Stephenson, submit a car-loan application in her name. When the loan was denied, Saaed submitted a second loan application on Stephenson's behalf to another bank without her knowledge or approval.

Saaed argues that he was unlawfully convicted under the statute because the phrase "without lawful authority" requires a showing that Stephenson's "means of identification" was used without her consent. *Id.* According to Saaed, the government failed to make that showing, since Stephenson willingly provided him with her personal information in connection with the first loan application. But even if it is true that Stephenson consented to Saaed filing the first application on her behalf, there is no dispute that she did not similarly consent to the submission of the second loan application, which was filed without her

10

knowledge.   *See* Dist. Ct. Doc. No. 309, Tr. at 346:16–17 (Stephenson testifying that the two had broken up and that Saeed told her "the loan was null and void" and she "no longer had to worry about it").   As a result, there is more than sufficient evidence to support the jury's finding that Saeed lacked consent and therefore lawful authority to use the means of identification for the second loan application.

We likewise reject Saeed's contention that the use of Stephenson's personal information was merely "ancillary" to the fraud and therefore outside the scope of the aggravated identity theft statute.   *See Dubin v. United States*, 599 U.S. 110, 114 (2023).   Unlike in *Dubin*, where the doctor's overbilling scheme depended not on mispresenting "*who* received [his] services" but rather "*how* and *when* [his] services were provided," *id.* at 132, Saeed's use of Stephenson's means of identification was "at the crux of what makes [the] underlying offense criminal," *id.* at 114.   The loan would have been approved on the false premise that it was Stephenson herself who applied for it.   *See id.* at 123 (describing how the statute is violated when the "deception goes to 'who' is involved" in the transaction with the deceived party).   *Dubin* does not require vacating Saaed's conviction.

11

**VI.   The District Court Did Not Abuse Its Discretion in Denying Saaed's Request for Counsel.**

Saaed argues that the district court erred when it denied his request for new counsel, made after the trial during a *Fatico* hearing concerning the amount of tax loss attributable to the underreporting of Exclusive's business income.   We review a district court's refusal to appoint new counsel for abuse of discretion. *See United States v. Kerr*, 752 F.3d 206, 222 (2d Cir. 2014).

In denying his request for the appointment of new counsel, the district court concluded that Saaed's request was a delay tactic.   The district court reminded Saaed that at a prior hearing held pursuant to *Faretta v. California*, 422 U.S. 806 (1975), the court had "made it very clear that if [he] opted to represent [him]self, [he] w[as] not going to be able to flip back and forth."   Dist. Ct. Doc. No. 265, Tr. at 195:22–24.   Saeed had a record of delaying proceedings.   Saeed first expressed his desire to proceed *pro se* in the middle of a hearing for bail pending sentencing. After the district court granted him leave to proceed *pro se*, it granted several adjournments which provided him with nearly fifteen months to prepare for sentencing.   We do not "insist upon a [more] formal inquiry or colloquy when the rationales for the request and decision are clearly apparent on the record."   *Kerr*, 752 F.3d at 221 (internal quotation marks omitted).   The district court did not

12

abuse its discretion in denying Saaed yet another opportunity to hijack the proceedings in the middle of testimony.

## VII. The District Court Did Not Procedurally Err in Rejecting Defendants' Sentencing Challenges.

Defendants make an assortment of challenges to the procedural reasonableness of their sentences, which we review deferentially for abuse of discretion. *See Gall v. United States*, 552 U.S. 38, 51 (2007). A sentence is procedurally unreasonable if the district court "fails to calculate (or improperly calculates) the Sentencing Guidelines range, treats the Sentencing Guidelines as mandatory, fails to consider the [section] 3553(a) factors, selects a sentence based on clearly erroneous facts, or fails adequately to explain the chosen sentence." *United States v. Chu*, 714 F.3d 742, 746 (2d Cir. 2013) (internal quotation marks omitted).

*First*, Defendants contend that the district court erred in calculating the relevant loss amounts based on intended, rather than actual, loss. But the relevant guideline, U.S.S.G. § 2B1.1 includes an application note that defines "loss" as "the greater of actual loss or intended loss." U.S.S.G. § 2B1.1 app. n. 3(A). We see no reason to depart from our statement in *United States v. Rainford*, 110 F.4th

13

455, 475 n.5 (2d Cir. 2024), that it is appropriate to consider "intended loss" under the Guidelines.   *See also United States v. Zheng*, 113 F.4th 280, 300 (2d Cir. 2024).

*Second*, Defendants argue that the district court erred when it estimated the tax loss in this case to be $969,838.36.   In particular, Defendants fault the court for relying on Exclusive's gross profit percentage from its 2009 tax return to calculate the true value of Exclusive's inventory for later years.   But the district court reasonably relied on Agent Margo Dabney's testimony that she had used the 2009 percentage "because for the subsequent years, ending inventory wasn't reported accurately."   Dist. Ct. Doc. No. 265, Tr. at 45:12–13.   Given the difficulty of calculating loss in cases where defendants are found to have misreported the relevant data, we have previously recognized that district courts may reasonably extrapolate the necessary information from past figures.   *See United States v. Bryant*, 128 F.3d 74, 76 (2d Cir. 1997); *United States. v. Uddin*, 551 F.3d 176, 180 (2d Cir. 2009).   While Defendants insinuate that 2009 may have been an unreliable year in light of the global financial recession, the district court did not clearly err by relying on that percentage.   Nor did it clearly err in attributing all tax loss to both Mehdi and Saaed, since it is well established that a defendant is responsible

14

for all reasonably foreseeable conduct undertaken in furtherance of a conspiracy. *See* U.S.S.G. § 1B1.3(a)(1)(B).

*Third*, Defendants argue that the district court erred when it calculated the loss to Walden Bank to be $119,865.26. While Defendants insist that the loss to Walden Bank should have been reduced to zero because Walden had been repaid by the time of sentencing, the Guidelines clearly state that loss shall be reduced by the "money returned . . . *before the offense was detected.*" U.S.S.G. § 2B1.1 app. n. 3(E)(i) (emphasis added). Accordingly, the district court did not err in declining to reduce the loss amount.

*Finally*, Saaed challenges the district court's application of a two-level enhancement under U.S.S.G. § 2B1.1(b)(2)(A) based on its finding that the fraud resulted in an actual loss to ten or more victims. At sentencing, Saaed argued that New York State suffered no loss and that some banks had only "nominal [unpaid] amounts." Dist. Ct. Doc. No. 318, Tr. at 75:21. But Saaed offered no evidence in support of his assertion of no loss, even though the district court provided him with an opportunity to do so. The Guideline also does not exclude victims who suffered so-called "nominal" or "minimal" losses from the calculation. *See* U.S.S.G. § 2B1.1(b)(2)(A); *see also id.* app. n. 3(A)(iii) (defining "[p]ecuniary harm"

as "harm that is monetary or that otherwise is readily measurable in money").

Accordingly, Defendants cannot show any procedural error at sentencing.

## VIII. The District Court Did Not Err in Ordering that Defendants Pay Restitution to New York State.

Defendants similarly challenge the district court's restitution order, arguing that New York State was not an "identifiable victim" that had been "directly harmed by" Defendants' fraud and therefore was not entitled to its unpaid taxes under the Mandatory Victims Restitution Act, 18 U.S.C. § 3663A(a)(2), (c)(1). We review restitution orders under an "extremely deferential abuse of discretion standard," *United States v. Grant*, 235 F.3d 95, 99 (2d Cir. 2000) (internal quotation marks omitted), and our review is for plain error where, as here, no objection was made below, *see United States v. Zangari*, 677 F.3d 86, 91 (2d Cir. 2012). We have previously upheld restitution orders to the federal and state governments deemed to be "victims" of tax crimes. *See United States v. Helmsley*, 941 F.2d 71, 101–01 (2d Cir. 1991). This is true notwithstanding the fact that "the government may

pursue a tax evader for unpaid taxes . . . in a civil proceeding." *Id.* at 102. We accordingly affirm the district court's restitution order.[2]

## IX. The District Court Did Not Err in Denying Defendants' Motions for New Trials.

Several months after appealing their convictions, Defendants each moved for new trials pursuant to Federal Rule of Civil Procedure 33 on account of two purportedly new pieces of evidence: (1) a section 5K1.1 letter filed in advance of Strauhs' sentencing that describes the substantial assistance he provided the government and contains a redacted paragraph titled "Additional Fraudulent Conduct"; and (2) Strauhs' failure to disclose on his CPA registration forms in 2020 and 2023 that he had pleaded guilty to conspiracy to commit bank fraud in 2019. We have little difficulty concluding the district court did not abuse its discretion in denying Defendants' motions, which require a "showing that the [above] evidence could not with due diligence have been discovered before or during trial, that the evidence is material, not cumulative, and that admission of the evidence

---

[2] Separately, Saaed appeals the denial of his motion for a sentence reduction as a zero-point offender under Amendment 821, U.S.S.G. § 4C1.1(a)(1). He seems to argue that the district court exceeded its jurisdiction when it denied his motion a few days before Amendment 821 went into effect. Although the district court's order does not explain the basis for denying Saaed's motion, the record makes clear that he is ineligible for such a reduction because he had one criminal history point for driving while impaired.

17

would probably lead to an acquittal." *United States v. Owen*, 500 F.3d 83, 87 (2d Cir. 2007).

With respect to the section 5K1.1 letter, Defendants do not dispute that the information in the redacted paragraph had been disclosed to defense counsel pursuant to the Jencks Act, 18 U.S.C. § 3500, two weeks before trial. Moreover, given the considerable evidence of Defendants' guilt introduced at trial, we cannot say that this cumulative evidence relating to Strauhs' credibility would have "probably le[d] to an acquittal" had the 5K letter and CPA registration forms been provided to Defendants before trial. *Owen*, 500 F.3d at 87.

## X. The District Court Did Not Err in Denying Saaed's Recusal Motion.

Saaed contends that the district court abused its discretion when it denied his motion for recusal under 28 U.S.C. § 455(a). Perversely, he argues that *his* expression of hostility to the district judge, in which he articulated his "hope that tragedy would befall [her] and [her] family," Dist. Ct. Doc. No. 298, was enough to undermine *the judge's* impartiality in the case. But our caselaw is clear that a party's expression of hostility toward the presiding judge is not sufficient to trigger an obligation on the part of the judge to recuse, lest parties be rewarded for making scurrilous comments or baseless claims of judicial misconduct. *See In re Basciano*, 542 F.3d 950, 957 (2d Cir. 2008) ("A defendant cannot be permitted to use

18

such a plot or threat as a judge-shopping device."). The mere fact that Saaed

expressed hostility toward the judge is not enough to lead "an objective,

disinterested observer, fully informed of the underlying facts[] [to] entertain

significant doubt that justice would be done." *Id.* at 956 (internal quotation marks

omitted). To the contrary, the district court's rulings throughout this case – which

we have upheld in full – reflect the court's fair and careful consideration of all

motions and arguments made in the course of this matter.

**XI. We Decline to Consider Mehdi's Ineffective Assistance of Counsel Claims.**

In his supplemental *pro se* brief, Mehdi raises a conclusory ineffective

assistance of counsel claim against his prior attorney in this matter. When an

ineffective assistance claim is raised on direct appeal, we may either (1) "decline

to hear the claim" so that it may be raised in a habeas petition brought pursuant

to 28 U.S.C. § 2255, (2) "remand . . . for [further] factfinding, or (3) "decide the

claim on the record before us." *See United States v. Adams*, 768 F.3d 219, 226 (2d

Cir. 2014) (internal quotation marks omitted). Because Mehdi's claim is based on

"errors of omission" and attorney-client conversations, it "requires consideration

of matters outside the record on direct appeal." *Billy-Eko v. United States*, 8 F.3d

111, 114 (2d Cir. 1993); *see also United States v. Salameh*, 152 F.3d 88, 161 (2d Cir.

1998).   Accordingly, we do not consider his ineffective assistance claim so that it may properly be brought pursuant to section 2255.[3]

* * *

We have considered Defendants' remaining arguments and find them to be without merit.[4]   Accordingly, we **AFFIRM** the judgments of the district court, and Defendants' motions for dismissal of the indictment and miscellaneous relief are denied.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[3] Since this case was submitted on direct appeal, Defendants filed a motion to vacate which also contains several new allegations.   *See* Doc. No. 290.   These, too, may be adjudicated by filing a habeas petition pursuant to section 2255.   *See United States v. Vilar*, 645 F.3d 543, 548 (2d Cir. 2011) (explaining "petitioners are . . . generally required to exhaust direct appeal before bringing a petition [under] [section] 2255" (internal quotation marks omitted)).

[4] In a last-ditch effort, Saaed filed a motion for a member of this panel to recuse himself from the case after it had been taken on submission.   That motion is denied.   None of the circumstances identified, *see* Doc. No. 282 at 8–9, would cause a reasonable observer to have any doubt that "justice would be done absent recusal," *In re Basciano*, 542 F.3d at 956 (internal quotation marks omitted).

20