18-2970-cr
United States v. Cotto

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2019

(Argued: November 15, 2019          Decided: April 20, 2020)

Docket No. 18-2970

———————————————————

United States of America,

*Appellee*,

v.

Jose Escalera AKA Tank, Charles Hecht,

*Defendants*,

Giovanni Cotto AKA Monte,

*Defendant-Appellant*.

———————————————————

Before:

PIERRE N. LEVAL, DEBRA ANN LIVINGSTON, JOSEPH F. BIANCO, *Circuit Judges*.

Defendant Giovanni Cotto appeals from a judgment of conviction in the United States District Court for the Western District of New York (Arcara, *J.*) on a single count of retaliating against a witness in violation of 18 U.S.C. § 1513(b)(1). The district court sentenced Cotto to 115 months imprisonment and four years of supervised release. On appeal, Cotto argues, *inter alia*, that the conviction should be vacated because the Government's evidence was insufficient for the jury to find that Cotto knew that the witness against whom he retaliated was a witness in a proceeding in federal court. Because we hold

that § 1513 did not require the Government to prove that Cotto had knowledge of the federal nature of the proceeding, and because we reject Cotto's remaining challenges, we AFFIRM the judgment of conviction, but REMAND for revision of the provision of the sentence relating to the substance abuse treatment condition of supervised release. We further instruct the district court to consider on remand whether our forthcoming order in *United States v. Traficante*, No. 18-1962 (2d Cir., submitted Oct. 25, 2019) requires modification of the risk notification provision of supervised release, and grant the parties leave to reinstate this appeal to permit review of the district court's decision on remand as to the risk notification provision.

MARTIN J. VOGELBAUM, Federal Public Defender's Office, Western District of New York, Buffalo, New York, *for Defendant-Appellant*.

MONICA J. RICHARDS, Assistant United States Attorney, *for* James P. Kennedy, Jr., United States Attorney for the Western District of New York, Buffalo, New York, *for Appellee*.

LEVAL, Circuit Judge:

Defendant Giovanni Cotto ("Cotto") appeals from a September 24, 2018 judgment of conviction in the United States District Court for the Western District of New York (Richard J. Arcara, *J.*) following a jury trial in which the jury found him guilty on a single count of retaliating against a witness (Anthony Maldonado) in violation of 18 U.S.C. § 1513(b)(1). The district court applied the specific offense characteristic in U.S.S.G. § 2J1.2(b)(2) to increase

2

Cotto's base offense level on the grounds that Cotto's offense resulted in a substantial interference with the administration of justice, and sentenced Cotto principally to 115 months of imprisonment with four years of supervised release. Cotto raises several arguments on appeal. 1) Cotto argues that the Government's evidence was insufficient to establish that he was aware that Maldonado's testimony, which motivated Cotto's retaliation, was in a "proceeding before a judge or court *of the United States*," and argues that such knowledge is a required element of the crime of conviction under 18 U.S.C. § 1513(b)(1), *see* Br. of Appellant at 7 (quoting § 1513(b)(1)) (emphasis added); 2) Cotto contends that the district court improperly limited his counsel's cross-examination of a witness at trial and demands a new trial on that basis; 3) Cotto argues that the district court improperly applied the sentencing enhancement under U.S.S.G. § 2J1.2(b)(2) (for substantial interference with the administration of justice) and demands a remand for resentencing; 4) He argues finally that the conditions of his supervised release impermissibly delegated judicial authority to the United States Probation Office, and demands their revision. As to that contention, the Government consents to a limited remand so that the district court can amend the

3

judgment of supervised release. For the reasons below, we affirm the conviction and the sentence, with the exception that, relying on the Government's consent, we remand for revision of the substance abuse treatment condition of Cotto's supervised release. We further instruct the district court to consider on remand whether our forthcoming order in *United States v. Traficante*, No. 18-1962 (2d Cir., submitted Oct. 25, 2019) requires modification of the risk notification provision of supervised release, and grant the parties leave to reinstate this appeal to permit review of the district court's decision on remand as to the risk notification provision.

## A. BACKGROUND

i.    <u>Cotto's crime</u>

In 2014, Cotto was an inmate at the Cattaraugus County Jail. The basis of his conviction in this case was that on May 23, 2014, at the Cattaraugus County Jail, he procured the assault of Anthony Maldonado ("Maldonado"), another Cattaraugus inmate, in retaliation for Maldonado's having testified for the Government in a federal court trial that was taking place in the Buffalo federal courthouse. Prior to these events, the victim, Maldonado, had admitted to federal authorities that he had participated in the murder of a

4

witness who was, at the time of the murder, cooperating in the federal prosecution of a narcotics conspiracy. Maldonado revealed to federal prosecutors that the witness's murder had been orchestrated by several individuals, including Jose Martinez. Maldonado's cooperation led to the indictment and eventual trial in the United States District Court for the Western District of New York before Judge William Skretny of Martinez, Angel Marcial, and several other individuals (the "*Martinez* trial"). Marcial and Martinez were charged in that case with retaliating against a witness and killing him. Maldonado was a witness for the prosecution at that trial. He provided direct testimony on May 20, 2014, and was cross-examined on May 21 and May 22. The court adjourned for the Memorial Day weekend on May 22, before the completion of Maldonado's cross-examination, and the trial was set to continue on May 27.

On May 22, 2014, Marcial was in the custody of the U.S. Marshal at the federal courthouse in Buffalo while awaiting his appearance as a co-defendant in the *Martinez* trial. Also in the U.S. Marshal's custody at the Buffalo federal courthouse was Jose Escalera, then one of Maldonado's fellow inmates at the Cattaraugus County Jail. Escalera was at the federal courthouse

as a defendant in a separate trial before Judge Arcara. Marcial and Escalera had previously been fellow inmates at another Erie County jail, where they shared access to the same facilities and likely became acquainted. On May 22, 2014, Marcial and Escalera were held in two of three cells on the ninth floor of the federal courthouse and were able to communicate with each other.

At the end of the day on May 22, after the adjournment of the *Martinez* trial in which Maldonado was testifying, Escalera, Maldonado, and Franky Ramos, also a Cattaraugus inmate, were transported together from the federal courthouse to the Cattaraugus County Jail. During that ride, Escalera told Ramos that Maldonado was "ratting on a big case" in the "federal courthouse." (Ramos testified to that conversation at Cotto's trial.) App'x at 357–58. Other evidence at Cotto's trial suggested that Cotto, Ramos, Marcial, and Escalera all were active or former members of the Latin Kings, a gang that operates within the prison system.

According to the testimony of another Cattaraugus inmate, Daniel Colon, upon Ramos's return to the Cattaraugus County Jail on May 22, Ramos told Cotto that Maldonado had been in court that day. Cotto then called down the cell gallery to Maldonado and asked him "if he went to court

6

today." App'x at 569. Cotto then said to Escalera: "That's got to be him." App'x at 570.

The next day, Escalera asked Esteban Ramos-Cruz, another Cattaraugus inmate (who testified to that conversation at Cotto's trial), to tell Cotto that Maldonado "was testifying against a Latin King." App'x at 498. Ramos-Cruz refused, but Escalera then apparently instructed another inmate to give Cotto the message.

No evidence adduced at trial indicates whether Ramos or any other person told Cotto that Maldonado had provided testimony in a *federal* trial. While several witnesses at Cotto's trial testified that other inmates at Cattaraugus knew that Maldonado had been "going to federal court day after day," App'x at 566, 719–20, there was no testimony that Cotto was told that Maldonado was going to federal court.

That same day — May 23, 2014 — Cotto informed another Cattaraugus inmate, Charles Hecht, that Maldonado "was a rat," and instructed Hecht to beat Maldonado in the recreation yard. App'x at 615–16. Later that day, while Cotto, Hecht, and Maldonado were in the recreation yard, Cotto repeated to Hecht that Maldonado was "a rat" that Hecht should "fuck him up." App'x at

622. Hecht then brutally assaulted Maldonado, with the result that he was removed from the recreation yard in a wheelchair. After the assault, Cotto "bragg[ed]" to Ramos that he, Cotto, had sent Hecht to beat Maldonado, and that Maldonado "deserved to get beat up." App'x at 366.

When the *Martinez* trial resumed on May 27, 2014, Maldonado was unable to continue his testimony because his jaw was wired shut as a result of Hecht's beating. The trial continued, but Maldonado's cross-examination was deferred until three weeks later, on June 16, 2014, after Maldonado's jaw had healed. An Assistant United States Attorney who participated in the *Martinez* trial testified at Cotto's trial that, upon Maldonado's return to court, he "did not seem to remember the details about which he was crystal clear prior to the assault," gave "significantly shorter" answers to questions, and that Maldonado's "capacity was substantially diminished." App'x at 175. The jury in the *Martinez* trial found Martinez guilty of a drug conspiracy charge, but found Martinez and the other defendants not guilty on the witness retaliation charge.

### ii.     Cotto's indictment and trial

On July 25, 2014, a grand jury returned the present indictment charging Cotto, Escalera, and Hecht with one count of retaliating against a witness in violation of 18 U.S.C. § 1513(b)(1).[1] Cotto and Escalera pled not guilty, and their trial took place in July 2017.  Hecht pled guilty and agreed to testify at trial for the Government in the trial of Cotto and Escalera.

At trial, Hecht testified to having assaulted Maldonado at Cotto's direction. Hecht also testified during his direct examination that he and Cotto devised a cover story to explain the assault. They planned that Hecht would say he was having a bad day, and that Maldonado had said something to Hecht to provoke the assault. Hecht further explained that, after he learned the seriousness of the offense of witness retaliation, he changed his story and

---

[1] The Government charged Cotto and Escalera under 18 U.S.C. § 2, which could establish their liability on either of two different theories of culpability: first, that Cotto and Escalera aided and abetted Hecht's act of retaliation in violation of § 1513(b)(1), under 18 U.S.C. § 2(a) (making punishable as a principal any person who "aids [or] abets" an offense against the United States); or second, that Cotto and Escalera willfully caused Hecht's act of retaliation in violation of § 1513(b)(1), under 18 U.S.C. § 2(b) (making punishable as a principal any person who "willfully causes an act to be done which if directly performed by him or another would be an offense against the United States"). *See United States v. Cotto*, No. 14-cr-133-A, 2018 WL 2410374, at *3–6 (W.D.N.Y. May 29, 2018).

9

told the "true story" to get a better plea deal. App'x at 631. On cross-examination, Hecht testified that he had lied to the officers who first interviewed him about the assault, and that he had told his girlfriend his "cover story" — *i.e.*, that he assaulted Maldonado because he was "having a bad day." App'x at 673, 692. Cotto sought to discredit Hecht's corrected account of the events by playing to the jury recordings of several of Hecht's phone calls with his girlfriend and others in which he asserted his non-retaliatory cover story. When, after playing four of the conversations, Cotto's counsel initiated playing a fifth such conversation, the district court sustained the Government's objection as "cumulative." App'x at 695. On redirect examination, Hecht again testified that the version he initially told to the interviewing officers and to his girlfriend was a false cover story.

The district court instructed the jury that the Government was required to prove "that the defendant acted with intent to retaliate against Anthony Maldonado for his attendance at or his testimony given in any official federal

proceeding." App'x at 854.[2] The court explained that "[a]n official federal proceeding includes a criminal proceeding before a federal court or a federal judge," and instructed the jury that "the case of *United States v. Martinez*, 10-CR-233S, is an official federal proceeding." App'x at 854–85. The court, however, did not instruct the jury that it was required to find that the defendants had knowledge of the federal nature of the proceeding in order to convict them.

The jury returned a verdict of guilty, and, in response to a special verdict question, found that Maldonado "was a witness in an official federal proceeding in which was charged an offense for which a maximum term of life imprisonment could have been imposed." App'x at 879.

In a post-trial motion for a judgment of acquittal under Federal Rule of Criminal Procedure 29, Cotto argued, *inter alia*, that the Government's evidence was insufficient to show that Cotto knew that Maldonado was

---

[2] The district court further instructed the jury that "the government need not prove that the defendant had knowledge of the case name and the case number for the particular official federal proceeding, nor . . . is [it] necessary for the government to prove that the defendant knew he was breaking any particular law." App'x at 855.

11

testifying in a *federal* case at the time of the beating, because there was "no evidence that Ramos-Cruz [or anyone else] conveyed anything more to Cotto than that Maldonado was testifying against [a Latin King]." Dist. Ct. Dkt. No. 269 at 9.[3] The district court denied the motion on May 29, 2018, holding that the jury "could have concluded that [Cotto] learned or inferred from Ramos — a federal prisoner who received his information from another federal prisoner — that Maldonado was testifying in the place from which Ramos and Escalera had recently learned their information: a federal court." *United States v. Cotto*, No. 14-cr-133-A, 2018 WL 2410374, at *5 (W.D.N.Y. May 29, 2018). The district court did not consider the question whether § 1513 required the Government to prove such knowledge.

Prior to sentencing, the Probation Department recommended in its Presentence Investigation Report ("PSR") the application of U.S.S.G.

---

[3] Cotto also moved for a new trial under Rule 33 of the Federal Rules of Criminal Procedure, arguing, *inter alia*, that the district court improperly cut short his counsel's cross-examination of Hecht by disallowing counsel to play more than four recordings of calls during which Hecht relayed to various individuals his "cover story" for the Maldonado beating. *See* Dist. Ct. Dkt. No. 270 at 8–9. The district court denied the motion, holding, as it did during trial, that the additional tapes were cumulative. *Cotto*, 2018 WL 2410374, at *11.

§ 2J1.2(b)(2)'s three-level enhancement for committing an offense resulting in the "substantial interference with the administration of justice," and recommended as a condition of supervised release a program of substance abuse treatment requiring Cotto to submit to non-consensual in-patient treatment if "approved by the Court" and to continue such treatment until completion or "as ordered by the Court." Dist. Ct. Dkt. No. 314 at 8, 27.[4] The district court imposed the three-level enhancement under § 2J1.2(b)(2), sentencing Cotto to 115 months imprisonment.[5]

As part of the sentence, the district court orally imposed a four-year term of supervised release, with a substance abuse treatment condition requiring Cotto to "enter into any treatment as deemed necessary by the U.S. Probation Office," and prohibiting Cotto from leaving treatment "until

---

[4] The PSR recommended application of the enhancement because "[t]he injuries sustained by the trial witness at the hands of the defendant were severe and required the expenditure of a substantial amount of time and money to address and prevented the trial witness from continuing his testimony . . . for several weeks, which interfered with the Government's presentation of its trial evidence." Dist. Ct. Dkt. No. 314 at 8.

[5] The district court explained that the enhancement was justified because Cotto's actions had "caused the victim to sustain significant injuries that altered the victim's testimony and required several weeks delay in the completion of the victim's testimony." App'x at 931.

discharge is agreed to by the U.S. Probation Office." App'x at 949–50. The court entered the written judgment on September 24, 2018, and included a special condition of supervised release requiring Cotto to undergo treatment "as deemed necessary by the U.S. Probation Office and/or the Court," and prohibiting him from leaving treatment "until discharge is agreed to by the U.S. Probation Office and/or the Court." App'x at 958. The judgment also included the district court's standard condition of supervision, permitting the probation officer, in the event the officer "determines that [Cotto] pose[s] a risk to another person," to "require [Cotto] to notify the person about the risk." App'x at 957. Cotto timely brought this appeal.

## B. DISCUSSION

### i.     Witness retaliation under 18 U.S.C. § 1513(b)(1)

Cotto's principal argument on appeal is that the crime of conviction under 18 U.S.C. § 1513(b)(1) required the Government to prove that Cotto knew that the proceeding in which Maldonado had testified was a federal proceeding — in other words, "a proceeding before a judge or court of the United States," 18 U.S.C. § 1515(a)(1)(A); Post-Argument Br. of Appellant 3–8, and that the Government's evidence failed to prove his knowledge, Br. of

14

Appellant 21–25.[6] We hold that to convict under § 1513(b)(1) the Government is not required to prove that the defendant knew of the federal nature of the proceeding. Accordingly, we need not consider whether the Government's evidence was sufficient to prove Cotto's knowledge.

Section 1513(b) provides:

Whoever knowingly engages in any conduct and thereby causes bodily injury to another person . . . or threatens to do so, with intent to retaliate against any person for—

> (1) the attendance of a witness or party at an official proceeding, or any testimony given . . . by a witness in an official proceeding; or

> (2) any information relating to the commission or possible commission of a Federal offense . . . given by a person to a law enforcement officer;

or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both.

---

[6] In its reply to Cotto's post-trial motions arguing that the evidence of Cotto's knowledge of the federal nature of the *Martinez* trial was insufficient, the Government did not argue that such a showing of knowledge was not required under § 1513(b)(1). The district court therefore did not consider this argument and denied Cotto's post-trial motions on the basis that the evidence was in fact sufficient.

Section 1515 sets out definitions of terms used in § 1513. It defines "official proceeding" to include "a proceeding before a judge or court of the United States," and defines "law enforcement officer" as "an officer or employee of the Federal Government." 18 U.S.C. § 1515(a)(1), (4). There is no question that, to sustain a conviction under § 1513(b)(1), the Government must prove beyond a reasonable doubt that the defendant acted with retaliatory intent arising out of a person's testimony at an "official proceeding," and that the proceeding in which the person testified was in fact a federal proceeding, such as one "before a judge or court of the United States." *Id.* § 1513(b); *id.* § 1515(a)(1).[7] That the statute is limited to acts of retaliation for testimony at federal proceedings, however, does not necessarily require that the defendant *know* that the proceeding in question was federal.

---

[7] *See United States v. Draper*, 553 F.3d 174, 180 (2d Cir. 2009) (stating elements of an offense under § 1513(b)(2)); *United States v. Brown*, 937 F.2d 32, 36 (2d Cir. 1991) (same).

*a. Applicable Law*

Whether § 1513(b)(1) requires proof that the defendant knew of the

federal nature of the proceeding is an issue of first impression in this circuit.[8]

In similar cases concerning the application of a *mens rea* requirement in a

federal criminal statute to an element limiting that statute to offenses that

---

[8] Cotto argues that we resolved this issue in *United States v. Brown*, 937 F.2d 32. *See* Br. of Appellant at 18, 20. We disagree. Our holding in *Brown* — which concerned a different provision of § 1513, prohibiting retaliation for information provided to federal "law enforcement officers" — did not depend on whether § 1513 required proof that the defendant knew he was retaliating against his victim for providing information to *federal* officers. While our opinion cited evidence which "could have reasonably led the jury to infer that [the defendant] was aware of the federal scope of the investigation," it did not hold that the Government needed to prove that knowledge. *Brown*, 937 F.2d at 37. The point of that aspect of the opinion was the obligation of the Government to prove "that [the victim's] contact with law enforcement officials . . . involved federal officers" and that the evidence was sufficient for the jury to find that the defendant acted with retaliatory intent. *Id.* at 35–37 (discussing the "[e]vidence of [r]etaliatory [i]ntent," *id.* at 35). No part of the *Brown* opinion holds that knowledge of federal involvement is a required element of an offense under 18 U.S.C. § 1513(b)(2).

The only other decision of a United States Court of Appeals to consider this issue is a non-precedential ruling of the Fourth Circuit in *United States v. Bullock*, 603 F. App'x 157 (4th Cir. 2015), which held, without explanation, that the district court below had "properly instruct[ed] the jury that to convict [the defendant] under 18 U.S.C. § 1513(b)(1), it needed to find that [the defendant] knew the official proceeding was a federal one." *Id.* at 159. While we consider rulings in other courts for their persuasiveness, we are not obligated to follow them. In this case, for reasons here set forth, we do not consider the *Bullock* ruling persuasive.

relate to the federal government or its jurisdiction, we have "look[ed] to the language of the statute, the intent of Congress as expressed in the legislative history, and cases involving the interpretation of this and similar statutes" for guidance. *United States v. Allen*, 788 F.3d 61, 66 (2d Cir. 2015) (citations omitted) (considering whether 18 U.S.C. § 1855, which imposes criminal penalties for willfully setting fire to federal land, requires that the defendant know the land is federal).[9]

The focal point of our inquiry is whether the element requiring that the official proceeding be federal is a substantive or a jurisdictional element of the offense. While <u>substantive</u> elements of a crime "describe the evil Congress seeks to prevent," <u>jurisdictional</u> elements simply "connect[] the law to one of Congress's enumerated powers, thus establishing legislative authority." *Torres v. Lynch*, 136 S. Ct. 1619, 1630 (2016); *see also id.* at 1626 (noting the

---

[9] Of course, of these sources of guidance, the text of the statute is of paramount importance. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005) ("As we have repeatedly held, the authoritative statement is the statutory text, not the legislative history or any other extrinsic material. Extrinsic materials have a role in statutory interpretation only to the extent they shed a reliable light on the enacting Legislature's understanding of otherwise ambiguous terms.").

"well-established background principle distinguishing between substantive and jurisdictional elements in federal criminal statutes"); *Rehaif v. United States*, 139 S. Ct. 2191, 2196 (2019) (explaining that jurisdictional elements "normally have nothing to do with the wrongfulness of the defendant's conduct").[10] And while we generally assume that "Congress intends to require a defendant to possess a culpable mental state regarding 'each of the statutory elements that criminalize otherwise innocent conduct,'" *Rehaif*, 139 S. Ct. at 2195 (quoting *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72 (1994)), that presumption does not apply to jurisdictional elements, *id.* at 2196 ("[J]urisdictional elements . . . are not subject to the presumption in favor of scienter."). Instead, "when Congress has said nothing about the mental state pertaining to a jurisdictional element . . . [c]ourts assume that Congress wanted such an element to stand outside the otherwise applicable *mens rea*

---

[10] *See also United States v. Epskamp*, 832 F.3d 154, 167 (2d Cir. 2016) ("[W]e have 'repeatedly . . . refused to find knowledge of the jurisdictional fact to be an essential element in prosecutions under' various criminal statutes requiring, for instance, that the criminal acts affect interstate or foreign commerce." (first quoting *United States v. Eisenberg*, 596 F.2d 522, 526 (2d Cir. 1979); then citing *United States v. Green*, 523 F.2d 229, 233–34 (2d Cir. 1975); and then citing *United States v. Herrera*, 584 F.2d 1137, 1150 (2d Cir. 1978))).

19

requirement." *Torres*, 136 S. Ct. at 1631; *see also United States v. Feola*, 420 U.S. 671, 676 n.9 (1975) ("[T]he existence of the fact that confers federal jurisdiction need not be one in the mind of the actor at the time he perpetrates the act made criminal by the federal statute.").

Accordingly, when the statute itself provides no indication that Congress intended for the offense to require knowledge of a jurisdictional element, and when the legislative history does not show that such a knowledge element was intended, courts generally conclude that no such requirement exists. *See, e.g.*, *United States v. Epskamp*, 832 F.3d 154, 166–67 (2d Cir. 2016) (holding that the statute then codified at 21 U.S.C. § 959(b), which prohibits possession of a controlled substance by "any person on board an aircraft owned by a United States citizen or registered in the United States," does not require evidence of the defendant's knowledge concerning the aircraft's registration); *Allen*, 788 F.3d at 69 (holding that 18 U.S.C. § 1855, which prohibits arson of "lands owned or leased by or under the partial, concurrent, or exclusive jurisdiction of the United States," does not require knowledge that the lands are federal); *United States v. Jennings*, 471 F.2d 1310, 1312 (2d Cir. 1973) (holding that while the federal anti-bribery statute,

20

codified at 18 U.S.C. § 201(b)(1), requires that "the official [bribed] must be a federal official . . . , nothing in the statute requires knowledge of this fact, which we perceive as a jurisdictional prerequisite rather than as a *scienter* requirement").

When, on the other hand, the statutory text or legislative history makes clear that a statute's *mens rea* element extends to a jurisdictional element, courts give effect to that requirement. *See Epskamp*, 832 F.3d at 167 (noting that an "obvious exception" to the rule that "knowledge of the jurisdictional fact . . . [is not] an essential element" is "when the statute itself *requires* knowledge of the jurisdictional element" (quoting *United States v. Eisenberg*, 596 F.2d 522, 526 (2d Cir. 1979))).[11]

---

[11] *See, e.g., United States v. Grande*, 620 F.2d 1026, 1036–37 (4th Cir. 1980) (holding that 18 U.S.C. § 1510, which criminalizes obstruction of a criminal investigation, requires that the defendant know that the relevant officer was a "federal criminal investigator" based on legislative history indicating that "if a person does not know that the investigator is a federal investigator, an act which would normally be in violation would not be so because of the lack of the scienter as to the identity of the investigator" (quoting H.R. Rep. No. 90-658 (1967), *as reprinted in* 1967 U.S.C.C.A.N. 1760, 1762)).

In *United States v. Yermian*, for example, the Supreme Court considered whether 18 U.S.C. § 1001, which prohibits false statements to the government, requires the Government to prove that the defendant knew that his false statement was made to a "department or agency of the United States." 468 U.S. 63, 68 (1984).[12] At the time, § 1001 provided:

> Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully . . . makes any false, fictitious or fraudulent statements or representations, . . . shall be fined . . . .

*Id*.[13] Noting that the "jurisdictional language appears in a phrase separate from the prohibited conduct," *id.* at 69, and that the legislative history of § 1001 did not provide any basis to read the statute as requiring a "specific intent to deceive the Federal Government" (as opposed to a state or local

---

[12] The defendant in *Yermian* admitted that he had made false statements to his employer (a private defense contractor) on a Department of Defense security questionnaire, but defended against the § 1001 charge by claiming that he "had no actual knowledge that his false statements would be transmitted to a federal agency." *Id.* at 65–66.

[13] Congress amended § 1001 in 1996, replacing the language "within the jurisdiction of any department or agency of the United States" with "within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States." Pub. L. No. 104-292, § 2, 110 Stat. 3459 (1996).

government), *id.* at 73, or "actual knowledge that false statements were made in a matter within federal agency jurisdiction,"*id.*, the Court concluded that the "primary purpose" of the jurisdictional language was to "identify the factor that makes the false statement an appropriate subject for federal concern," *id.* at 68. Accordingly, the Court held that proof that the defendant knew the fact establishing jurisdiction — namely, that the false statement was made to the federal government — was not required under the statute. *Id.* at 75.

### b. *Analysis*

Neither the text nor legislative history of § 1513 demonstrates that Congress considered a defendant's knowledge of the federal nature of the "official proceeding" to be an essential element of the offense. Indeed, they suggest the contrary — that Congress regarded the federal limitation as a jurisdictional element and not part of what rendered the defendant's conduct culpable.

First, and most fundamentally, the text of § 1513 does not extend that section's knowledge requirement to the definition of "official proceeding"

23

provided in a separate section of Title 18.[14] Second, even assuming an

ambiguity in the text that would prompt us to turn to other tools of statutory

interpretation, *see Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992), the

legislative history confirms that Congress intended the limitation of § 1513 to

acts of retaliation for participation in *federal* proceedings as a jurisdictional

element, *i.e.* a provision to limit the effect of the statute to offenses within

Congress's power to regulate. S. Rep. No. 97-532, at 19, 22, *as reprinted in* 1982

U.S.C.C.A.N. 2515, 2525, 2528 (explaining that § 1513 is limited to offenses

related to "Federal" "official proceeding[s]" in order to avoid overextending

---

[14] A 1980 House Report concerning the proposed Criminal Code Revision Act, from which Congress drew considerably when drafting the bill containing § 1513, *see* S. Rep. 97-532 at 10, notes that "[s]ome current laws have been interpreted as requiring that the prosecution prove that the defendant had a particular mental state in connection with the jurisdictional basis of the offense, even though the existence of such an 'anti-Federal' intent has nothing to do with the actor's culpability," and proposes that federal criminal statutes "specify the Federal jurisdiction over an offense in a separate subsection of the offense" to avoid confusion between substantive and jurisdictional elements. H.R. Rep. No. 96-1396, at 15–16 (1980); 128 Cong. Rec. 26,351 (1982) (statement of Chairman Rodino) (citing this section of the 1980 House Report); *see also United States v. Noel*, 893 F.3d 1294, 1298 (11th Cir. 2018) (holding that 18 U.S.C. § 1203, which criminalizes hostage taking outside the United States as long as the hostage is a "national of the United States," does not require a showing that the defendant knew the citizenship status of the hostage, in part because "the requirement that the victim be American is set forth in a different subsection of the statute than the elements that are designated as punishable").

federal jurisdiction); *see also* 128 Cong. Rec. 26,351 (1982) (statement of Chairman Rodino) (explaining, with respect to both § 1512 and § 1513, that "the Federal nature of the proceeding . . . go[es] to the power of the Federal government to assert jurisdiction over conduct, rather than to the criminal nature of the conduct").[15] There is no clear indication in the legislative history that Congress intended the limitation to federal proceedings to do anything more than "ensure that the Federal Government has the constitutional authority to regulate the defendant's conduct." *Rehaif*, 139 S. Ct. at 2196. It is not as if Congress deemed retaliatory assaults on witnesses in state proceedings to be innocent conduct which would be worthy of prohibition only if a federal proceeding were involved. *See United States v. Ardito*, 782 F.2d 358, 361–62 (2d Cir. 1986) (holding that a similar anti-obstruction provision,

---

[15] The Senate Report discussed an earlier version of the proposed Victims and Witness Protection Act, introduced in the Senate on September 16, 1982, which included in both Sections 1512 and 1513 a subsection entitled "Jurisdiction" providing that "[t]here is Federal jurisdiction over an offense described in this section if— . . . the official proceeding, offense, or prosecution is or would be a Federal official proceeding, offense, or prosecution." *See* S. 2420, 97th Cong. § 201 (1982). The enacted version of the bill did not include these jurisdictional elements in Sections 1512 or 1513, instead including them in § 1515(a), which provides definitions for terms used in those substantive provisions. *See* Victim and Witness Protection Act of 1982, Pub. L. No. 97-291, § 4(a), 96 Stat. 1248 (1982).

18 U.S.C. § 1503, does not require the Government to prove that the defendants knew that they obstructed a trial in *federal* court to secure a conviction for obstruction of justice).

To the contrary, the "findings and purposes" section of the bill enacting § 1513 states an intention to "enhance and protect the necessary role of crime victims and witnesses in the criminal justice process" and to "ensure that the Federal Government does all that is possible . . . to assist victims and witnesses of crime." Victim and Witness Protection Act of 1982, Pub. L. No. 97-291 § 2(b), 96 Stat. 1248 (1982); *see also* S. Rep. 97-532 at 20 ("The intent of section 1513 is to expand considerably the protections offered by [other provisions of Title 18] to victims and witnesses."). Importantly, the Senate Report specifically states that § 1513 was meant to "expand" the protections already provided by, *inter alia*, 18 U.S.C. § 1503, which, the Senate Report notes, "relates to witnesses in criminal proceedings, but only applies to witnesses under subpoena in cases which are still active," S. Rep. 97-532 at 14, and "does not explicitly provide for unsuccessful attempts at retaliation," *id.* at 20. An offense under § 1503 for obstructing justice at a judicial proceeding does not require the Government to prove that the defendant knew that the

obstructed proceeding was federal in nature. *Ardito*, 782 F.2d at 362; *see also*

*United States v. Aragon*, 983 F.2d 1306, 1310 (4th Cir. 1993). We cannot

conclude, absent sufficient basis in the statutory text or legislative history,

that Congress intended to impose on § 1513 a limitation that does not exist in

a parallel statutory provision whose protections § 1513 was expressly

intended to expand.

Furthermore, adding such a knowledge requirement to § 1513 would

significantly undercut the accomplishment of its purposes. It will often be the

case that the federal nature of a particular proceeding has absolutely no

relevance to a defendant's motivation to retaliate for a witness's cooperation

with law enforcement.[16] One might reasonably assume that the reason the

Government had relatively scant evidence that Cotto knew of the federal

nature of the *Martinez* trial was that this particular fact was irrelevant to

Cotto's motivation for ordering the attack on Maldonado. When Ramos-Cruz

---

[16] *Cf. Ardito*, 782 F.2d at 360 (noting, in a case regarding two defendants who had attempted to obstruct a federal criminal trial, that the Government's evidence, consisting of tape recorded conversations during which the defendants planned their obstruction, "did not contain any statements which would suggest that appellants knew that the . . . [obstructed trial was] in federal court").

testified at trial about his conversation with Escalera on May 23 — during which Escalera implored him to inform Cotto that Maldonado "was a snitch" — he testified that, when Escalera made his request, Escalera merely told him that Maldonado "was testifying against a Latin King," and said nothing about whether the proceeding was in federal or state court. App'x at 498. As may be true in many cases of witness retaliation, the fact of the witness's betrayal of his partners in crime — and the potentially devastating future consequences of a witness's continuing cooperation with law enforcement — was motivation enough. To require the Government to establish the defendant's awareness of the federal nature of the proceeding in which the witness testified, when the federal nature of the proceeding was irrelevant to the retaliatory motivation, would often preclude effective prosecutions of witness retaliation. *See Torres*, 136 S. Ct. at 1630. We can surmise no reason why Congress would wish to do so, and do not impute to Congress a limitation that the statutory text does not require. *Cf. Feola*, 420 U.S. at 684 (in a case concerning a statute prohibiting assaults on federal officers, declining to require a showing that the defendant knew the victim to be a federal officer, noting that "[a] contrary conclusion would give insufficient protection to the

28

agent"); *Noel*, 893 F.3d at 1298 n.1 (noting that "the protective effect of the statute would be undermined if the prosecution had to show" knowledge of the jurisdictional element).

    *c.  Comparison to Section 1512 and Chairman Rodino's Floor Statements*

Cotto's strongest, but nonetheless still insufficient argument is that for a parallel provision of the same statute, the Victim and Witness Protection Act of 1982, 18 U.S.C. § 1512, which imposes criminal penalties on defendants who use force to "influence, delay, or prevent the testimony of any person in an official proceeding," Congress added a provision expressly providing that the Government need not prove that the defendant knew the federal nature of the official proceeding. 18 U.S.C. § 1512(g). Cotto contends that Congress's inclusion of this clarifying subsection in § 1512, but not in § 1513, demonstrates Congress's intention to require knowledge of the jurisdictional element for § 1513 prosecutions. He also calls our attention to a floor statement of Representative Peter Rodino, then-Chairman of the House Judiciary Committee, which indicates that Mr. Rodino believed that, without such a provision, courts would require the Government to prove a defendant's knowledge of the jurisdictional elements, which he believed

29

would be more harmful to the objective of § 1512 than of § 1513. Mr. Rodino's statements were based on a misunderstanding of how courts interpret jurisdictional elements in federal criminal statutes.[17] We are not persuaded that his floor statements and the inclusion of the clarifying provision in § 1512 compel departure from our well-established and sensible default rule that knowledge of purely jurisdictional elements is generally not required.

The relevant provisions of 18 U.S.C. § 1512 state:

(b) Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so . . . with intent to—

   (1) influence, delay, or prevent the testimony of any person in an official proceeding . . . [or]

   (3) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense . . .

---

[17] *See Feola*, 420 U.S. at 676 n.9 ("[T]he existence of the fact that confers federal jurisdiction need not be one in the mind of the actor at the time he perpetrates the act made criminal by the federal statute."); *see also United States v. Cooper*, 482 F.3d 658, 665 (4th Cir. 2007) ("Congress legislates against [the] well-established backdrop, aware that jurisdictional elements generally assert federal jurisdiction but do not create additional statutory elements as to which defendants must have formed the appropriate mens rea in order to have broken the law.").

shall be fined under this title or imprisoned not more than 20 years, or both.

(g) In the prosecution for an offense under this section, no state of mind need be proved with respect to the circumstance—(1) that the official proceeding . . . is before a judge or court of the United States . . . .

Section 1513, unlike § 1512, does not include a provision that the government need not prove the defendant's "state of mind . . . with respect to the circumstance . . . that the official proceeding . . . is before a judge or court of the United States." *See* Post-Argument Br. of Appellant at 5–7. Cotto urges us to draw from this difference the conclusion that Congress intended to require the Government to prove the defendant's knowledge of the federal nature of the proceeding when prosecuting offenses under § 1513, but not under § 1512.

In support of this position, Cotto points to a ruling of a Kentucky district court, *United States v. Denham*, 663 F. Supp. 2d 561 (E.D. Ky. 2009), concerning § 1513(b)(2), which prohibits retaliation for the giving of information about a federal offense to a federal law enforcement officer. The court concluded that § 1513(b)(2) does require knowledge that the law enforcement officer was federal, relying in part on the inclusion of subsection

31

(g) in § 1512, but not in § 1513. *Denham*, 663 F. Supp. 2d at 568–69. The court

explained the discrepancy between the two provisions by explaining that

§ 1512 concerns attempts to prevent the communication to federal officers of

"information [that] may not yet have been provided, which makes a

defendant much less likely to know of the involvement of a federal officer,"

while § 1513 concerns attempts to retaliate for information *already provided* to

law enforcement. *Id.* at 569–70. Accordingly, the *Denham* court reasoned,

Congress could have included subsection (g) in § 1512 out of concern that

requiring a showing of the defendant's knowledge that the "law enforcement

officer" to whom the victim provided information was a *federal* officer would

make prosecutions under § 1512 too difficult — and could have declined to

include a similar provision in § 1513 due to Congress's judgment that proving

such knowledge when prosecuting *retaliation* for testimony already given

would be far easier. *Id.*

The *Denham* court also pointed to Mr. Rodino's floor statements as

follows:

> [Section 1512(g)] is necessary because of the convention that the
> state of mind applicable to the conduct required for the offense
> also applies to any circumstances or results that are required.

> Because the terms "official proceeding" and "law enforcement officer" are defined in section 1515 to mean Federal proceeding and Federal officer . . . it would be necessary for the prosecution, absent [subsection (g)], to prove that the defendant knew the official proceeding or law enforcement officer was a Federal proceeding or Federal officer.

128 Cong. Rec. 26,351 (1982) (statement of Chairman Rodino). Chairman Rodino further explained:

> By the nature of the offense [specified in § 1513], the wrongdoer knows that the person retaliated against has been a party to or witness in a Federal proceeding or has reported information to a Federal law enforcement officer. It is therefore unnecessary to preclude the applicability for the convention on states of mind [for the § 1513 offense].

*Id.* at 26,354 n.13.

We respectfully disagree with the *Denham* court's conclusion. Mr. Rodino's statements must be read in light of his mistaken belief that courts would require the Government to prove the defendant's knowledge of federal jurisdictional elements. *See* 128 Cong. Rec. at 26,351. As the Supreme Court had clarified seven years before Chairman Rodino made this statement, "the existence of the fact that confers federal jurisdiction need not be one in the mind of the actor at the time he perpetrates the act made criminal by the

33

federal statute." *Feola*, 420 U.S. at 676 n.9; *see also* MODEL PENAL CODE § 1.13 cmt. at 211 (Official Draft and Revised Comments 1985) (explaining that mens rea is "irrelevant" with respect to jurisdictional elements). Mr. Rodino was incorrect to conclude that, but for subsection (g) of § 1512, "it would be necessary . . . to prove that the defendant knew the official proceeding . . . was a Federal proceeding." 128 Cong. Rec. at 26,351.

Mr. Rodino's floor statement reveals that his mistaken concern with the possibility that courts would require knowledge of federal involvement for § 1512 prosecutions did not extend to § 1513. But Mr. Rodino's lack of concern for the possible requirement of knowledge that the proceeding was federal in § 1513 is not the same as an intent to impose such a limiting requirement on the offense defined by that section. As discussed above, the "default rule" is that, "when Congress has said nothing about the mental state pertaining to a jurisdictional element, . . . [c]ourts assume that Congress wanted such an element to stand outside the otherwise applicable *mens rea* requirement." *Torres*, 136 S. Ct. at 1631. We cannot infer, from a single member's misinformed floor statement explaining refusal to tolerate wrongly predicted judicial rulings requiring knowledge as to § 1512, that Congress *as a whole*

34

intended that the courts depart from the sensible "default rule" for the application of knowledge requirements to the jurisdictional elements of another section. *See Garcia v. United States*, 469 U.S. 70, 76 (1984) ("We have eschewed reliance on the passing comments of one Member [of the Legislature] and casual statements from the floor debates [when surveying legislative history]." (citations omitted)).[18]

Mr. Rodino appears also to have been misinformed as to the adverse consequences of imposing this knowledge requirement. He assumed that, because the testimony or giving of information addressed by § 1513 had already occurred when the defendant retaliated, there would be no difficulty proving that the defendant knew the federal context. *See* 128 Cong. Rec. 26,354 n.13. However, for criminals, who are inclined to exact revenge for their associates' cooperation with law enforcement, there is no reason why

---

[18] Reading § 1513 to exclude any requirement of the defendant's knowledge of the federal nature of the "official proceeding" would arguably render 18 U.S.C. § 1512(g), which accomplishes the same effect in the context of § 1513's sister provision, superfluous. However, the canon disfavoring statutory interpretations that render text superfluous is not "woodenly appl[ied]" and permits such readings where, as here, "Congress may have simply intended to remove any doubt" about a statute's meaning. *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 226 (2008).

they would have much interest in whether the cooperation was with federal or state officials or whether their testimony was in federal or state court, as both have the capacity to secure long prison sentences for those aggrieved by the cooperation. As the evidence in this case shows, the messages among those interested in retaliation often say no more than to identify the intended victim as "a rat" or a "snitch." More refined details are unnecessary to establishing the perceived need for retaliation. Furthermore, the giving of information to federal officials is often done in secret, as is the giving of testimony to a grand jury (which functions under the supervision of a federal court). Contrary to Mr. Rodino's assumption that, because the event has already happened, there will be little difficulty proving that those who retaliated knew of the federal context, those who know enough to recognize that cooperation has occurred often do not know, and do not care, about the details. It is a safe assumption that in the cases of numerous violent retaliations, it would be impossible to prove the defendant's knowledge that the proceedings or the officers were federal. We have no reason to believe that other members of Congress who voted to pass § 1513 did not understand how courts conventionally applied *mens rea* requirements to jurisdictional

36

elements or did not have a better understanding of the realities of organized crime. It seems logical to assume that other members of Congress would have passed § 1513 with awareness that the courts would follow the default practice of not making the knowledge requirement applicable to jurisdictional elements (unless the words of the statute called for this interpretation), and with awareness of how problematic it would be for the enforcement of the statute if it were construed to require proof of knowledge that the proceedings or officials were federal.

Accordingly, we conclude that 18 U.S.C. § 1513(b)(1) does not require the government to prove that the defendant knew that the "official proceeding" was federal, as specified in 18 U.S.C. § 1515(a)(1). Because it was not necessary for the Government to prove that Cotto knew that the *Martinez* trial was a trial in federal court, we need not consider whether the Government's evidence was sufficient to establish such knowledge.[19]

---

[19] Because we reject Cotto's challenge to the district court's denial of his motion for a judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure on the grounds that the Government did not need to prove that Cotto knew that the *Martinez* trial was an "official proceeding" as defined by § 1515(a)(1), and accordingly affirm the district court's denial of Cotto's motion on the grounds that

ii.     The district court's limitation on Cotto's cross-examination of Hecht

Cotto also challenges the district court's denial of his motion for a new trial under Federal Rule of Criminal Procedure 33, arguing that the district court erred by limiting his counsel's cross-examination of Hecht. Rule 33 motions are "granted only in extraordinary circumstances, and are committed to the trial court's discretion." *United States v. Torres*, 128 F.3d 38, 48 (2d Cir. 1997) (internal quotation marks and citations omitted). Before ordering a new trial under Rule 33, the district court must find that there is a "real concern that an innocent person may have been convicted." *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001) (citation omitted). We review challenges to a district court's denial of a Rule 33 motion for abuse of discretion, accepting the district court's factual findings unless clearly erroneous. *United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009); *see also United States v. White*, 692 F.3d 235, 244 (2d Cir. 2012) ("We review evidentiary rulings, including a trial

---

the evidence was sufficient for a reasonable jury to find that Cotto willfully *caused* the retaliatory act under 18 U.S.C. § 2(b), *see Cotto*, 2018 WL 2410374, at *4–6, we need not consider Cotto's argument that his conviction under § 1513(b)(1) was invalid under an aiding and abetting theory pursuant to 18 U.S.C. § 2(a). *See* Br. for Appellant at 17–20.

court's decision to limit the scope of cross-examination, for abuse of discretion." (citation omitted)).

As explained above, during Hecht's cross-examination, Cotto's counsel played to the jury four recordings of phone calls in which Hecht had said that he beat Maldonado because he was "having a bad day." These tapes were relevant under Federal Rule of Evidence 613(b) as prior inconsistent statements tending to discredit Hecht's testimony that he beat Maldonado because Cotto told him to do it because Maldonado was a rat. After Cotto's counsel had played four tapes and prepared to play a fifth, the district court sustained the Government's objection on the ground that a fifth tape would be cumulative.

In its opinion denying Cotto's Rule 33 motion, the district court explained its decision to sustain the Government's objection as follows:

> [Cotto's] arguments must be considered against the backdrop of Hecht's entire cross-examination. *Before* the tapes were played, Hecht acknowledged — multiple times — that his trial testimony was inconsistent with statements he had made during his first interview with DEA agents and during several subsequent phone calls. The Court then allowed defense counsel to play excerpts from four tapes containing, in substance, the same inconsistent statements that Hecht had just admitted making. Likewise, co-

> Defendant Escalera vigorously cross-examined Hecht about his
> many inconsistent statements, at one point getting Hecht to admit
> that he had lied "20 or 30" times "about this event." . . . [I]t is
> difficult to discern how allowing [Cotto] to play two additional
> tape excerpts with inconsistent statements would have led the jury
> — after hearing Hecht admit multiple times that he had lied about
> the events in this case — to conclude that Hecht's testimony was
> not truthful.

*Cotto*, 2018 WL 2410374, at *10–11. On appeal, Cotto argues — as he did below

— that the district court's decision to "truncate" his counsel's cross-

examination of Hecht by limiting counsel's ability to play the tape recordings

"deprived him of his best opportunity to show that Hecht was . . . an

opportunist" and testified untruthfully. Br. of Appellant at 28, 33. Cotto

highlights the importance of Hecht's testimony to the Government's case, *see*

*id.* at 20–30, 32, and argues that allowing his counsel to play additional

material to the jury would not have consumed an "inordinate amount of time

or resources," *id.* at 33. We conclude that it was reasonable and entirely

within the district court's discretion to sustain the Government's objection to

the playing of a fifth tape. *See United States v. Flaharty*, 295 F.3d 182, 190–91

(2d Cir. 2002) ("[A] trial court has wide discretion to impose limitations on the

cross-examination of witnesses . . . [and] may exclude even relevant evidence

40

if it finds that [its] probative value . . . is substantially outweighed . . . by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." (internal quotation marks and citation omitted)).

     iii.    <u>Sentencing enhancement for "substantial interference with the administration of justice"</u>

Cotto further challenges the district court's imposition of a sentencing enhancement under U.S.S.G. § 2J1.2(b)(2) on the grounds that the attack on Maldonado caused a "substantial interference with the administration of justice." Br. of Appellant at 34–40. The facts justifying a sentence imposed under the Guidelines need be proved only by a preponderance of the evidence. *United States v. Guerra*, 888 F.2d 247, 251 (2d Cir. 1989). We review challenges to criminal sentences for procedural reasonableness, a standard "akin to review for abuse of discretion," *United States v. Parnell*, 524 F.3d 166, 169 (2d Cir. 2008) (citation omitted), which requires us to review the district court's interpretation of the Guidelines *de novo*, and its findings of fact for clear error, *id.*

The relevant Guideline provides for a three-level increase "[i]f the offense resulted in substantial interference with the administration of justice."

U.S.S.G. § 2J1.2(b)(2). The commentary to the Guidelines defines "substantial interference with the administration of justice" to "include[] a premature or improper termination of a felony investigation; an indictment, verdict, or any judicial determination based upon perjury, false testimony, or other false evidence; or the unnecessary expenditure of substantial governmental or court resources." *Id.* cmt. application note 1. We have held that the commentary's "listing of acts warranting this enhancement is not exclusive," and recognized that "other acts — if similarly or even more disruptive of the administration of justice — could serve as bases" for the enhancement. *United States v. Amer*, 110 F.3d 873, 885 (2d Cir. 1997). Accordingly, we have held that offenses that prevent or substantially interfere with "proper legal proceedings" qualify for the enhancement. *Id.* at 885 (enhancement applied when defendant removed children from the country which "prevented proper legal proceedings [relating to custody] from occurring"); *United States v. Jones*, 900 F.2d 512, 522 (2d Cir. 1990) (noting that "[i]n some cases, when the defendant has concealed evidence and is the only known source of

information, substantial interference with the administration of justice may be inferred" (citations omitted)).[20]

The beating of Maldonado not only required a substantial delay of his testimony in the *Martinez* trial, but also resulted in the impairment of Maldonado's capacities as a witness. Thomas S. Duszkiewicz, an Assistant United States Attorney who participated in that proceeding, testified at Cotto's trial that when Maldonado resumed his testimony after the beating,

> [Maldonado] did not seem to remember the details about which he was crystal clear prior to the assault. . . . [H]is answers became significantly shorter, whether it was pain from the injuries or whether it was some other impairment or impediment to him consciously retelling the story as he had told it several times previously. His capacity was substantially diminished.

App'x at 175. We have no doubt that the brutal beating of a witness during his testimony, resulting in a three-week delay of the witness's

---

[20] *See also United States v. Waterman*, 755 F.3d 171, 173 (3d Cir. 2014) (affirming application of § 2J1.2(b)(2) enhancement based on the defendant's destruction of a hard drive, which "resulted in the early termination of [an] FBI investigation"); *United States v. Gray*, 692 F.3d 514, 522–23 (6th Cir. 2012) (affirming application of § 2J1.2(b)(2) enhancement based on defendant's "falsification of documents" which made an ongoing investigation "more difficult and delayed [the defendant's] trial for four years").

testimony and causing a substantial and noticeable diminution in the witness's capacity or willingness to testify, qualifies as a "substantial interference with the administration of justice." While the results of Cotto's offense do not fit neatly within the examples listed in the commentary to U.S.S.G. § 2J1.2, that list is "not exclusive" and Cotto's offense is one of those "other acts . . . similarly . . . disruptive of the administration of justice" that may nonetheless qualify for the enhancement. *Amer*, 110 F.3d at 885. We therefore uphold the district court's application of the three-level enhancement under U.S.S.G. § 2J1.2.

    iv.    <u>Conditions of supervised release</u>

Cotto also challenges two conditions of supervised release imposed in the district court's September 24, 2018 judgment. First, he challenges the special condition requiring him to undergo substance abuse treatment "as deemed necessary by the U.S. Probation Office and/or the Court," and prohibiting him from leaving treatment "until discharge is agreed to by the U.S. Probation Office and/or the Court," on the grounds that the condition impermissibly delegates to the Probation Office the discretion to determine whether Cotto must undergo such treatment, what treatment is "necessary,"

and when he is permitted to leave treatment. The Government points out that the Western District of New York has since revised its special condition language, and that the revised condition expressly requires the court — and not the probation officer — to approve the substance abuse treatment and to decide when the defendant may leave treatment. The Government consents to a limited remand to permit the court to amend the judgment according to the revised special condition language. Br. of Appellee at 29–30. Cotto agrees that amending the judgment according to the revised language would address his concerns. Reply Br. of Appellant at 16. Accordingly, we remand for revision of the provision of the sentence relating to the substance abuse treatment condition of supervised release.

Second, Cotto challenges the district court's imposition of its standard conditions of supervised release, on the grounds that those conditions include a "risk notification" provision that has since been held unconstitutional by this court's decision in *United States v. Boles*, 914 F.3d 95, 110–12 (2d Cir. 2019). The Government points out that the district court has since issued a standing order modifying this condition. Cotto, however, argues that the risk notification provision in the district court's standing order still impermissibly

delegates judicial authority to the Probation Office. Reply Br. of Appellant at 14–16. Our panel cannot resolve this issue at this time because another panel of our court is considering the same issue in a pending appeal, which has priority over this case. *See United States v. Traficante*, No. 18-1962 (submitted Oct. 25, 2019). In all likelihood, what is decided by that panel will control our decision of Cotto's challenge to the district court's revised "risk notification" provision. Accordingly, the district court should consider, on remand, our forthcoming decision in *Traficante* and, if necessary, modify the relevant provision of Cotto's sentence so that it is consistent with that decision. We further grant the parties leave to reinstate this appeal, by letter to the Clerk of Court, to permit review of the district court's decision on remand as to the risk notification provision.

## C. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of conviction, but REMAND for revision of the provision of the sentence relating to the substance abuse treatment condition of supervised release, and further instruct the district court to consider on remand whether our forthcoming

order in *United States v. Traficante*, No. 18-1962 (2d Cir., submitted Oct. 25, 2019) requires further modification of the risk notification provision of supervised release. Finally, we grant the parties leave to reinstate this appeal to permit review of the district court's decision on remand as to the risk notification provision.